# Richmond

RALPH S. JESSEE v. BASCOM L. SLATE, ADMINISTRATOR, &C.

April 25, 1955.

Record No. 4326.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*I. M. Quillen,* for the plaintiff in error.

*Penn, Stuart & Phillips,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

This action was brought by Bascom L. Slate, administrator of the estate of Thomas W. Slate, deceased, hereinafter referred to as plaintiff, against Ralph S. Jessee, hereinafter referred to as defendant, to recover damages for the wrongful death of plaintiff's decedent which occurred when a horse he was riding was struck by a truck driven by defendant's agent, Jimmy Ferguson, at the time a seventeen year old boy. The jury returned a verdict for the plaintiff in the sum of $9,200 which the court, by its judgment and pursuant to Code, § 8-638, ordered paid to decedent's widow. Thereafter a writ of error was awarded defendant, who in his seven assignments of error contends, (1) that the verdict is contrary to the law and the evidence and without

evidence to support it; (2) that the court erred in granting and refusing certain instructions, and (3) that the court erred in admitting certain evidence.

██ There is no evidence of contributory negligence on the part of decedent and no evidence that the driver of the truck had time to avoid the collision once the horse and rider had moved completely onto the hard surface of the road. Consequently, our inquiry of whether the verdict is contrary to the law and the evidence and without evidence to support it is confined to the sole issue of whether the truck driver was guilty of negligence which proximately caused the accident.

Plaintiff's theory on this phase of the case is stated in Instruction No. 4, which was given without objection, as follows:

"You are instructed that if you believe from the greater weight of the evidence that Slate's horse was prancing sideways and that an automobile was approaching near at hand from the opposite direction, and if you further believe that Ferguson saw this, or by using ordinary care should have seen it, and if you further believe that an ordinarily prudent and competent truck driver would not have attempted to pass Slate then, under all the circumstances, and if you further believe that Ferguson nevertheless tried to pass Slate and that the death of Slate was proximately caused thereby, then you are instructed that the plaintiff is entitled to recover damages from the defendant, and your verdict should be for the plaintiff, unless you further believe that Slate was himself guilty of negligence which proximately contributed to the accident."

Defendant's theory is contained in Instruction E-2, which reads as follows:

"The Court instructs the jury that if they believe from the evidence that the defendant's driver, Ferguson, immediately prior to the happening of the accident was driving his truck carefully and at a reasonable rate of speed and did nothing reasonably calculated to frighten the horse ridden

by Slate, and observed nothing or by the exercise of ordinary care should observe nothing which would indicate to a reasonably prudent person that the horse ridden by Slate might become excited and uncontrollable, and thereby place Slate, the rider, in peril, and that the accident was caused by the horse suddenly and unexpectedly turning from its course and crossing the road in front of the truck, and that a reasonably prudent person would not have reasonably anticipated such behavior on the part of such animal under the facts and circumstances proven in this case, and that as soon as Ferguson discovered Slate's peril, or by the exercise of reasonable foresight should have discovered it, he used all reasonable means in his power to stop and to avoid striking the said horse and rider, then the defendant would not be guilty of negligence in this respect and the jury should find for the defendant."

The evidence, construed most favorably to plaintiff and viewed in the light of the instructions, shows that on the morning of August 20, 1953 defendant's agent, Ferguson, was driving a two and one half ton truck loaded with approximately five tons of crushed stone in a westerly direction along U. S. Highway No. 19 in Russell county. The weather was clear and the road dry. Upon arriving at the crest of a hill some twelve miles east of Lebanon, where the road was downgrade and straight for about four tenths of a mile, Ferguson testified that he saw "a man on a horse going down the edge of the road * * * pretty far away * * * riding kind of on the edge of the road and then off on the shoulder." This man, decedent, was also traveling in a westerly direction and was about three tenths of a mile from Ferguson.

As Ferguson was approaching decedent from the rear, E. D. Pence, his wife and son, riding in an automobile driven by Pence, were approaching the horse and rider from the opposite direction and upon nearing the horse Pence slowed down for the purpose of permitting his son to get a better view of the horse. When the Pences first

saw decedent, his horse was walking along the shoulder of the highway, but when Ferguson's truck reached a point "not less than 100 yards" from Slate, as stated by Mrs. Pence, the horse, still going west, began to prance sideways down the shoulder at about a 45 degree angle with its head out over the hard surface. In prancing along the shoulder in this manner the horse had his feet on the hard surface twice, but Slate managed to pull it back to the shoulder the first time. After the horse had pranced sideways for about 25 feet, it is uncontradicted that in spite of Slate's efforts to restrain the horse, it moved completely into the northerly lane of traffic where it was struck by the defendant's truck. The north lane of the highway was 9 feet 10 inches wide and the truck was 7 feet 7½ inches wide.

Ferguson was driving about 40 to 45 miles per hour and did not slow down or blow his horn prior to the collision. After striking the horse, the truck veered into Pence's lane of traffic and Pence was forced to leave the hard surface in order to avoid being struck by the truck, which stopped 86 feet from the point of collision. The impact knocked Slate and the horse 50 feet and 66 feet, respectively, west along the highway. The truck wheels passed over Slate's head, killing him instantly, and the horse was injured to the extent that it had to be destroyed. Although Ferguson claimed to have applied his brakes before striking the horse, the State Trooper who investigated the accident testified that the rear tire marks of the truck began 22 feet west of the point of impact and continued for a distance of 25 feet.

Most of the foregoing facts are from the testimony of Mr. and Mrs. Pence. In some respects their testimony was in conflict and in some respects conflicted with that of the truck driver and with their prior written statements. For example, Mrs. Pence testified that the horse started prancing sideways when the truck was "not less than 100 yards" from the horse; Mr. Pence said the truck was "over 100 feet" away when the horse started prancing, and Ferguson said he would not call the action of the horse prancing but

that it was walking straight ahead like a "Tennessee Walking Horse would do." The fact that a witness makes statements inconsistent, contradictory, conflicting or materially different from those made on other occasions or even at a former trial does not render his testimony nugatory, because the duty of the jury is to determine the truth or falsity of those statements made in court and not elsewhere. *Lane* v. *Commonwealth*, 184 Va. 603, 35 S. E. (2d) 749; *Hendricks* v. *Commonwealth*, 163 Va. 1102, 178 S. E. 8; 20 Michie's Jur., Witnesses, § 74, p. 535. "A jury has the right to believe the testimony of a confessed perjurer though it should weigh his statements with great caution." *Margiotta* v. *Aycock*, 162 Va. 557, 565, 174 S. E. 831. Once credible evidence has been weighed and acted upon by the jury the result is usually conclusive.

A case strikingly similar to the instant case is *Rose* v. *Edmonds*, 271 Ky. 36, 111 S. W. (2d) 427, where the plaintiff, while riding a horse and leading a mule on the right hand side of the road, was struck from behind by defendant's truck, traveling in the same direction, when the horse moved toward the center of the road. There was conflicting evidence whether the animals showed signs of "restlessness or fright which was clearly observable to one approaching from behind." In holding that the truck driver's negligence was a question for the jury, the court said:

"The various witnesses for the plaintiff say that such activities of the animals first began, all the way from 50 to 150 yards in front of the truck, and which, if believed by the jury (and which it evidently did) clearly indicated the ability of the driver of the truck to observe such conditions long before he arrived at the point of the collision, and to have furnished him ample time and opportunity to regulate the speed of his truck, or even stop it. * * * The object of the law always is to exact from the persons concerned that degree of care that an ordinarily prudent person would take in the circumstances to avert the danger. In this case, if

the plaintiff's witnesses told the truth, defendant's truck approached plaintiff from the rear when the animals in her charge were in a fretful and uncontrollable condition. It was the driver's duty, if he saw or could have seen the situation by exercise of ordinary care in time, to not only have taken the precautions we have discussed, but to have actually stopped his car rather than to risk the most probable danger of collision 'by continuing his journey and paying no heed to the situation."

In the instant case the jury by its verdict has found, as indicated above, that Ferguson approached Slate from the rear, traveling downhill at 40 to 45 miles per hour with five tons of crushed stone on his truck; that he saw or should have seen, when he was about 100 yards from Slate, that he was going to pass the Pence car very near where Slate was riding a horse that was prancing sideways with its head out over the hard surface. In addition, the jury was warranted in finding that Ferguson did not slow down, sound his horn, apply his brakes or turn to the left or right before striking the horse. Furthermore, the north lane in which Ferguson was traveling at the time of the collision was only a few inches over two feet wider than the truck, and since he was admittedly in that lane and going to pass "pretty close" to the horse which had its head over the hard surface at the time, the truck might well have struck the horse even if the animal had remained on the shoulder of the road. See Code, § 46-224, which provides that an overtaking vehicle "shall pass at least two feet to the left" of an overtaken vehicle. See also, *Laubach* v. *Howell*, 194 Va. 670, 74 S. E. (2d) 794. Thus, we have a situation fraught with dire possibilities that should have impressed the truck driver with the necessity of acting with due caution. Hence, under all the facts and circumstances which the jury was warranted in accepting as true, it was for it to determine whether Ferguson negligently operated the truck, and if so, whether that negligence was a proximate cause of the accident.

■ Since the evidence supports the verdict of the jury, we must affirm the judgment unless the court committed error in its rulings ·during the progress of the trial.

Defendant objected to Instruction No. 3,[1] which told the jury that if Ferguson was guilty of negligence that "proximately caused or proximately *contributed*" to Slate's death, the defendant was liable unless Slate was guilty of negligence which proximately caused or contributed to his death. Defendant contends that by the use of the italicized word "contributed" in this instruction the court told the jury that it could find him liable even though Slate were negligent.

The instruction itself removes all doubt as to whether the jury could find the defendant liable even·though Slate were guilty of negligence which contributed to his death, because after stating the circumstances under which the defendant could be held liable, the instruction said, "unless you further believe that Tom Slate was himself guilty of negligence which proximately caused or contributed to his death." Furthermore, the evidence shows that Ferguson and Slate were not the only actors on the scene. The acts of the horse were unquestionably a contributing cause of the accident, and the Pence car approaching from the opposite direction may have contributed to its unfortunate behavior.

While we do not approve this instruction in the form given, under the facts and circumstances of the case it was not reversible error to so instruct the jury. It is nothing more than an unartful statement of the familiar principle that an accident may be the result of more than one proximate cause. *White* v. *So. Ry. Co.*, 151 Va. 302, 144 S. E. 424. This principle is clearly illustrated in *Etheridge* v. *Norfolk So. R. Co.*, 143 Va. 789, 799, 129 S. E. 680, in

[1] Instruction No. 3 reads as follows: "You are instructed that if you believe from the greater weight of the evidence that the driver of the truck, Jimmy Ferguson was guilty of negligence as defined in Instruction No. 2, and if you further believe that such negligence proximately caused or proximately contributed to the death of Tom Slate, then the defendant Jessee is liable for damages in this case, unless you further believe that Tom Slate was himself guilty of negligence which proximately caused or contributed to his death."

the following terse language: "Heat, moisture and spring-time may stir a dormant bud; each would be a proximate cause, and this would not be changed even though it should appear that they contributed to that result in an unequal degree."

 Defendant assigns error to the giving of Instruction No. 5, which told the jury that "the driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety, and such overtaking vehicle shall give way to an oncoming vehicle." Defendant's objection to the instruction was not that it did not correctly state the law but that it was "based upon a situation which does not exist in this case. There was no undertaking to pass another vehicle proceeding in the same direction. There was no undertaking to pass anything that was using the traveled portion of the road." In other words, defendant contends first, that Slate on horseback was not a vehicle as contemplated by Code, § 46-183,[2] and second, that since Slate was not using the "traveled portion" of the road, Ferguson did not have to observe the usual duties of an overtaking motorist.

Instruction No. 5 is based on Code, § 46-228,[3] and merely informed the jury that if Ferguson saw, or should have seen, that he would meet the Pence car at or near the horse, then he could not legally cross the center line if it became

---

[2] Code, § 46-183 provides: "Every person riding a bicycle or an animal upon a roadway and every person driving any animal shall be subject to the provisions of this chapter applicable to the driver of a vehicle, except those provisions which by their very nature can have no application."

[3] Code, § 46-228 provides: "The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety and such overtaking vehicle shall give way to an oncoming vehicle."

necessary to do so in order to pass Slate in safety. Code, § 46-183 (note 2, *supra*) not only clearly provides that a rider or driver of an animal shall be subject to the regulations of traffic applicable to the driver of a motor vehicle, but the defendant's Instruction D was based on that statute and told the jury that "any person riding a horse upon the highway of Virginia is subject to the same rules and regulations applicable to the driver of a motor vehicle, except those provisions which by their very nature can have no application." Furthermore, the fact that Slate was riding along the shoulder of the road and not on the "traveled portion" or hard surface did not relieve Ferguson of the duties of an overtaking motorist. The word "highway" as defined in Code, § 46-1(8) is not confined to the hard surfaced portion of a road but to the "way or place of whatever nature" which is "open to the use of the public for purposes of vehicular travel," and this includes the shoulders as well as the hard surface of the road. *Crouse* v. *Pugh*, 188 Va. 156, 49 S. E. (2d) 421; *Burton* v. *Oldfield*, 195 Va. 544, 79 S. E. (2d) 660. Hence, there is no merit in defendant's contention that it was error to grant Instruction No. 5, and especially so since it was only supplemental to paragraphs 2 and 4 of Instruction No. 2,[4] to which there is no error assigned.

---

[4] Instruction No. 2 reads in part:

"You are instructed that Jimmy Ferguson owed the following duties to Tom Slate: * * *

"(2) Not to exceed such speed as was reasonable under the existing circumstances, and to keep the truck under such control as to be able to slow down, or if necessary, stop before reaching Slate, if he saw or by using ordinary care should have seen that Slate might reasonably be endangered if he tried to pass Slate at that point, and it is for the jury to determine whether the defendant was operating his truck at a reasonable rate of speed under the circumstances. * * *

"(4) Not to try to pass Slate at all at that point if, because of an approaching automobile or any other reason, he could not drive far enough to the left to leave a reasonable amount of room between his truck and Slate's horse for Slate's reasonable safety, under all the existing circumstances."

██ Defendant also assigns error to the granting of Instruction No. 7, which told the jury "that it was the duty of Jimmy Ferguson to make reasonable allowance for the natural characteristics of a horse before attempting to pass Slate." There was no error in the granting of this instruction because it did no more than tell the jury that upon approaching Slate from the rear with the intention of passing him, Ferguson had the duty of making reasonable allowance for the fact that Slate was riding an animal which possessed characteristics fundamentally different from those of a motor vehicle. It was an explanation of the exception in Code, § 46-183 (note 2, *supra*) which was the basis of other instructions given on behalf of both parties, that all the rules applicable to motor vehicles apply to the rider of an animal except those provisions which "by their very nature" can have no application.

In addition to the several instructions herein discussed, other appropriate ones were given, and a careful examination of all of them in connection with the evidence to which they apply convinces us that none misled the jury or was prejudicial to the defendant.

██ The next ground relied on by the defendant for a reversal of the judgment is that the court erred in failing to strike the testimony of the witness Pence that one of the reasons for his slowing down as he approached the horse was that "you never know what an animal will do." The objection to this evidence is similar to that made to Instruction No. 7. While reasons for witnesses' acts are not ordinarily admissible, in this case the defendant was not prejudiced by this statement and in any event it was not reversible error to admit it.

The defendant's final assignment of error is that the trial court erred in admitting evidence that decedent was receiving at his death $39.10 monthly in social security payments. The only reasons assigned in that court for rejecting this evidence was a general objection that it was irrelevant and immaterial. The answer to this objection is that the

evidence was clearly covered by defendant's Instruction J,[5] under which it was admissible and for the jury to consider in fixing damages at what was "fair and just." Code, §8-636.

In our opinion the judgment is plainly right and therefore it is affirmed.

*Affirmed.*

[5] Instruction J reads in part:

"The jury are instructed that in ascertaining the damages that the plaintiff is entitled to recover, they shall find the same with reference:

"First to the pecuniary loss sustained by the beneficiaries, who are the widow and children of Tom Slate, of the deceased, fixing such sum as would be equal to the probable earnings of the deceased, taking into consideration his age, intelligence and health during what would have been his lifetime if he had not been killed."