# Richmond

PORTSMOUTH TRANSIT COMPANY v. HERBERT L. BRICKHOUSE, ADMINISTRATOR, ETC.

May 4, 1959.

Record No. 4937.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Archibald G. Robertson* and *Lewis Thomas Booker* (*L. S. Parsons; Hunton, Williams, Gay, Moore & Powell; Parsons, Stant, Parsons & Mirman*, on brief), for the plaintiff in error.

*Luther W. White, III* and *William C. Worthington* (*Worthington, White & Harper*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Albert E. Brickhouse, a 13-year-old boy, was riding a bicycle on High Street, in the city of Portsmouth, when it was struck by a bus owned and operated by Portsmouth Transit Company. He died next day from his injuries and his administrator brought this action for damages and recovered a verdict and judgment against the defendant from which it appealed. Under its assignments of error it contends there was no proof that it was negligent and that the court erred in the admission of evidence and in its rulings on instructions.

The only evidence was that offered by the plaintiff, which was to the following effect as the jury could have viewed it:

High street, where the accident happened, runs east and west, is level and straight, and has three lanes for westbound traffic and three lanes for eastbound traffic, each lane being about 10 feet wide. The accident occurred about 9 a.m. on June 3, 1957, in the 2700 block of High street between Kirn street on the east and Watson street on the west. The boy was going west on his bicycle and the bus was going in the same direction. Traffic was rather heavy. Some cars were parked in the most northerly lane of High street.

Two witnesses testified to seeing the accident. One was driving his car eastwardly in the lane next to the middle of the street. He saw the boy perhaps 150 feet from him coming west and he saw the bus at the same time. It was obvious that an accident was about to happen. The boy on the bicycle was right at the front corner of the bus and was then in the air, distinctly not on the ground, but he could not say whether the boy was then on the bicycle or whether he had been hit. The bus then veered to its left, crossed in front of the witness, struck the right front bumper and fender of his car, crossed the eastbound traffic lanes, the sidewalk on the south side of the street, a vacant lot and stopped against a house. He recalled seeing the driver very rapidly turning the steering wheel and the

front wheels of the bus turning. He had no impression as to the speed of the bus.

The other eye-witness was likewise driving east in the lane next to the center of the street. He saw the boy riding west and the bus also coming west and a little to the rear of the bicycle. The bus was in the lane next to the north lane in which the cars were parked. The boy was "seemingly" between two of the cars parked about three car lengths apart. He was riding about three-fourths of a car width from the north curb and was about three-fourths of the way toward the second parked car. The bus driver had enough space to go past this second car and there was enough space between the bus and the parked car in which to ride a bicycle. The right-hand side of the bus struck the bicycle and the boy and the bicycle went forward into the street. It appeared to him that the boy came out from between these two parked cars and the bus driver swerved away to try to avoid hitting him. After the bus hit the boy in the direction of the swerve it continued in that direction, jumped the curbing on the opposite side of the street and went into a field and against a house.

A police officer reached the scene a few minutes after the accident. He marked on a map where he thought the accident happened, which was approximately five feet east of where the boy was still lying in the street. The mark was near the middle of the lane in which the bus was traveling. From this mark to the place where the bus stopped against the house was about 200 feet. The bus driver told him that he saw the boy approximately 10 to 15 feet ahead of the bus riding a bicycle west on the north side of High street; that the boy fell from the bicycle and he did not know whether he struck him with the bus or not; that he made a short left turn across High street, headed south and went up against the house to avoid striking the boy.

After the accident the bicycle had a dent in its rear fender about 18 inches from the ground which was not there when the boy started to school just before the accident.

There was evidence tending to show that as the boy was riding along the street the top of his head was 5 feet above the ground and that the parked cars were of normal height; that the average height of a relatively late model autom·  ε is approximately 5 feet.

A map made by a civil enginec  vas introduced to show the line of vision that the bus driver shoul  ιve had over the top of a parked

automobile from 60 feet away and from shorter distances as it approached the car.

The defendant offered no evidence but rested its case on its motion to strike the plaintiff's evidence on the ground that it was insufficient to show any negligence. The court overruled that motion and we hold that it was not error to do so. Under the conditions existing at the time of the accident, the position of the boy riding his bicycle between the two parked cars, the distance of these two cars apart, his nearness to the car in front requiring a veering to the left to pass it, the height of the boy and of the parked cars, and the evidence tending to show that the bicycle was overtaken and struck from the rear, it was proper to submit to the jury the question of whether or not the bus driver in the exercise of reasonable care should have seen the boy so riding in front of him in time to have brought his bus under such control as to be able to slow down or stop if necessary to guard against the uncertain movements of a young boy on a bicycle. *Cf. Cooke* v. *Griggs,* 183 Va. 851, 856, 33 S. E. 2d 764, 766; *Boyd* v. *Brown,* 192 Va. 702, 709, 66 S. E. 2d 559, 563; *Jessee* v. *Slate, Adm'r,* 196 Va. 1074, 1079, 86 S. E. 2d 821, 824; *Matthews* v. *Hicks, Adm'r,* 197 Va. 112, 115, 87 S. E. 2d 629, 631; *Wickman* v. *Bohle,* 173 Md. 694, 196 A. 326.

Defendant insists that it was error to allow the police officer to testify to the statement made to him by the driver of the bus, as referred to above, *i.e.,* that he saw the boy approximately 10 to 15 feet ahead of the bus riding west on the north side of High street, and that the boy fell from the bicycle and he did not know whether he struck him with the bus or not. The police officer had been called to investigate the accident. It was, he said, approximately 20 minutes after the accident that he talked to the driver. The statement was offered at the trial as a declaration against interest but the plaintiff now concedes that it was not admissible on that ground but he contends that it was admissible as part of the *res gestae.*

In the recent case of *Kuckenbecker* v. *Commonwealth,* 199 Va. 619, 101 S. E. 2d 523, we held inadmissible as part of the *res gestae* a statement of a person who had been assaulted, made from 30 to 50 minutes after the assault had occurred, on the ground that it was not a spontaneous utterance but a narrative of a past occurrence. We said that the spontaneity of the utterance is the guaranty of its trustworthiness and that "(w)hile the statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the pre-

sumption that it is the result of deliberation. It must not be a mere narrative of a past, completed affair," citing *Chappell* v. *White*, 182 Va. 625, 633, 29 S. E. 2d 858, 862.

"* * Res gestae are events speaking for themselves through the instinctive words and acts of the participants, not the words and acts of participants when narrating the events." 7 Mich. Jur., Evidence, § 259, p. 642. "Generally, in order for a declaration to be admissible as a part of the res gestae, it must be the spontaneous utterance of the mind, while under the influence of the transaction, the test being whether the declaration was the facts talking through the party or the party talking about the facts." *Idem*, § 262 at p. 646. *Upton* v. *Commonwealth*, 172 Va. 654, 2 S. E. 2d 337; 6 Wigmore on Evidence, 3 ed., § 1747.

There is nothing here to suggest that the statement of the driver was a spontaneous utterance. The contrary is shown. The officer was investigating an accident that had occurred approximately 20 minutes before and the driver was talking to him about how it happened. The driver was giving a narrative of a past event. The officer's testimony as to what he said was hearsay and its admission in evidence was reversible error.

The defendant also objected and assigned error to the evidence of the experiment made to show the supposed line of vision of the driver of the bus and the map filed by the engineer to illustrate the result. The experiment was based on the height of the eyes of a person 5 feet 11 inches tall as he sat in the driver's seat of one of defendant's busses parked at the carbarn. The height of the person driving the bus involved in the accident was unknown, as was his sitting posture in the bus as it was in motion through the traffic. The parked cars were to his right, not straight ahead, as was the car in the experiment, which could have been either lower or higher than the parked cars. These uncertain elements could have made the actual view of the driver very different from the hypothetical view produced by the experiment. The experiment was based on elements and conditions some of which were and others of which could have been quite different from those existing at the time of the accident, and was therefore inadmissible in evidence. *Lane* v. *Hampton, Adm'r*, 197 Va. 46, 49, 87 S. E. 2d 803, 805; *Doss* v. *Rader*, 187 Va. 231, 236, 46 S. E. 2d 434, 437; *Bell* v. *Kenney*, 181 Va. 24, 29-30, 23 S. E. 2d 781, 783.

Plaintiff says that the evidence of the experiment was offered "to depict to the jury that the bus driver, seated in a high position and

looking across a lower stationary object, can always see *below* the elevation of that lower object," and "(t) his fact is known to reasonable men anyhow." If so, it was not a proper subject for expert testimony, *Venable* v. *Stockner, post* p. 900; and it would still be true that unless the elevations used were accurate and the conditions substantially similar, the resulting picture could be misleading.

The basis for the assignment of error to the rulings on instructions was the principle that an instruction should not be given when there is no evidence tending to prove the facts on which it is based. Discussion of the assignment in advance of the evidence to be presented at the new trial would not be in order.

The judgment below is reversed and the case is remanded for a new trial.

*Reversed and remanded.*