## Richmond

## James Clyde McIlwain, Jr. v. Susan Cary Etheridge McIlwain.

March 10, 1975.

Record No. 740064.

Present, All the Justices.

*Frank N. Perkinson, Jr.,* for appellant.

*Harvey S. Lutins (Lutins & Lawrence,* on brief), for appellee.

Cochran, J., delivered the opinion of the court.

Susan Cary Etheridge McIlwain, plaintiff, filed a bill of complaint on January 7, 1972, against her husband, James Clyde McIlwain, Jr., defendant, seeking a divorce *a mensa et thoro,* to be merged into an absolute divorce at the proper time, on the ground of cruelty tantamount to constructive desertion that was alleged to have occurred on December 30, 1971. She asked for custody of their three-year-old son, alimony, and child support, and for an injunction restraining defendant from coming on the

property where the family resided, or communicating or interfering with plaintiff and their child. A temporary injunction order was entered January 7, 1972. Defendant filed an answer and cross-bill in which he denied plaintiff's allegations and sought a divorce on the ground that plaintiff had constructively deserted him by obtaining the injunction order that was served on him.

The matter was referred to a commissioner in chancery, who heard the evidence *ore tenus* and reported that plaintiff had proven cruelty equivalent to constructive desertion and was entitled to a divorce. Defendant's exceptions to the commissioner's report were overruled, and the chancellor entered a final decree on September 28, 1973, dismissing defendant's cross-bill and awarding plaintiff a divorce *a vinculo matrimonii* on the ground of cruelty tantamount to constructive desertion occurring on January 7, 1972. Defendant has appealed, contending that the chancellor erred in granting plaintiff a divorce on uncorroborated evidence and in denying defendant a divorce on the ground of constructive desertion.

Plaintiff and defendant were married in 1965. Defendant was regularly employed as an accountant, but during the latter part of the marriage he also had an interest in a small business which occupied much of his free time. After the birth of their son in 1969 plaintiff was not employed.

Plaintiff testified that she had been struck by her husband at least 23 times during their marriage, and that he had kicked her, pushed her to the floor and dragged her out of bed by the heels. She relied, however, on three specific acts of cruelty.

Plaintiff asserted that one morning in the summer of 1970 defendant struck her at the breakfast table. Her friend and next-door neighbor, Charlotte Ann Hanks, testified, over defendant's objection, that she was awakened that morning by "a lot of yelling" coming from the McIlwains' house, and that a "couple of hours later", while she and plaintiff were walking their dogs, plaintiff said that defendant had struck her earlier that day at the breakfast table. Mrs. Hanks saw no physical evidence of injury to plaintiff. Defendant denied having struck his wife on that date or at any other time during the marriage.

The second incident on which plaintiff relied to establish cruelty occurred on August 28, 1971. Plaintiff testified that she returned home late at about 6:30 p.m. with their son, who had

"the flu"; that defendant refused to let her remain; that he locked her out of the house, and refused even to permit her to get medicine for the child; and that she instituted divorce proceedings, but after three weeks she and her husband became reconciled. Mrs. Hanks partially corroborated this testimony and testified that defendant told plaintiff, "Go back to your Mother"; that he finally permitted his wife to get some things in the house for the child but said to her, "You have five minutes, and if you're not out of the house, I'm going to sock you." Defendant admitted that on one occasion he had insisted that plaintiff live with her mother for "a short period of time."

The third incident occurred on January 5, 1972, the son's birthday, the same day the bill of complaint was acknowledged by plaintiff before a notary public and a week after the date of the constructive desertion as alleged in the bill. Plaintiff testified that defendant came home that evening from work, became angry over a toy purchased by plaintiff's mother for the child, and pushed plaintiff down and struck her. Mrs. Hanks testified that plaintiff telephoned her and reported this occurrence.

There is uncontradicted evidence that plaintiff's close relationship with her mother was a source of constant friction, that plaintiff frequently visited her mother in the afternoon for cocktails, and that defendant resented what he considered to be unwarranted intrusions by his mother-in-law upon his married life. In a letter written in December, 1971, to defendant's mother, who was visiting them, plaintiff acknowledged that she must assume a more adult role, independent of her mother, to help solve the marital problems. The record indicates that the marriage was stormy, that plaintiff and defendant were bad-tempered, and that plaintiff resented the demands made upon defendant by his two jobs, which gave him little time at home except to eat and sleep.

There is evidence that on two occasions defendant spoke slightingly of his wife in the presence of Mrs. Hanks. Plaintiff's best friend, Martha Lucille Hood, testified, however, that, although defendant appeared to be uninterested and indifferent when she had dinner with them, she did not recall that he ever humiliated or embarrassed his wife. There is uncorroborated evidence that plaintiff consulted a doctor for a nervous condition that she alleged was caused by defendant's conduct toward her.

After a careful reading of the evidence we conclude that the chancellor erred in granting plaintiff a divorce.

■ Code § 20-99 (Cum. Supp. 1974) provides that a divorce shall not be granted "on the uncorroborated testimony of the parties or either of them . . . ." Assuming, but not deciding, that the alleged act of cruelty that occurred on January 5, 1972, after the date of the constructive desertion alleged in the bill of complaint, could properly be considered, there is no evidence to corroborate plaintiff's testimony as to what happened.

The alleged act of cruelty in the summer of 1970, to which plaintiff testified, is corroborated only by her self-serving statement made to Mrs. Hanks. This hearsay evidence was admitted as coming within the *res gestae* exception, under which spontaneous utterances at or immediately after an event are held to be admissible. *See Portsmouth Transit Co.* v. *Brickhouse,* 200 Va. 844, 847-48, 108 S.E.2d 385, 387-88 (1959); *Kuckenbecker* v. *Commonwealth,* 199 Va. 619, 101 S.E.2d 523 (1958). But the time interval is important in determining the spontaneity of the utterance. In *Brickhouse, supra,* the statement was made twenty minutes after the event; in *Kuckenbecker, supra,* the statement was made thirty to fifty minutes later; and both statements were held to be inadmissible. Here, the interval was at least two hours, and the statement was made under circumstances that compel the conclusion that it was not a part of the *res gestae* and was inadmissible as being merely a narrative account given by the plaintiff to her friend and confidante. Moreover, even if admissible, it is not sufficient to afford the corroboration required within the meaning of Code § 20-99. *See Johnson* v. *Johnson,* 213 Va. 204, 208, 191 S.E.2d 206, 209 (1972).

■ The third alleged act of cruelty, the exclusion of plaintiff and their son from the family home in August, 1971, corroborated by Mrs. Hanks, was relied upon heavily by the commissioner in reporting that plaintiff had proved cruelty amounting to constructive desertion. This act gave rise to divorce proceedings initiated by plaintiff. The parties, however, became reconciled after several weeks and resumed their marital relationship, so that plaintiff forgave her husband and condoned this act of cruelty, thereby eliminating it as a ground for divorce unless it was revived by subsequent cruel conduct of the defendant. *See Sollie* v. *Sollie,* 202 Va. 855, 860-61, 120 S.E.2d 281, 285 (1961). As there was no testimony

corroborating any alleged continuation of cruel conduct, this incident cannot be revived and relied upon as the basis for a divorce on the ground of cruelty constituting constructive desertion. Thus, there is insufficient evidence to support plaintiff's allegations, and the chancellor erred in granting her a divorce.

■ There is no merit in defendant's contention that plaintiff constructively deserted him by causing him to be excluded from the family home by the injunction proceedings. The injunction order was entered on January 7, 1972, upon the filing of plaintiff's bill of complaint. The record shows that the bill of complaint and the injunction were personally served on defendant by delivering copies thereof to him on January 8, 1972. Thus, the injunction order became effective after plaintiff had instituted her suit for divorce, and her actions in causing defendant to be banned from the family home would not make plaintiff guilty of constructive desertion in separating at that time from her husband. *Painter* v. *Painter*, 215 Va. 418, 211 S.E.2d 37, decided January 20, 1975; *Plattner* v. *Plattner*, 202 Va. 263, 266, 117 S.E.2d 128, 130 (1960); *Hudgins* v. *Hudgins*, 181 Va. 81, 87-88, 23 S.E.2d 774, 777 (1943). *Brooks* v. *Brooks*, 200 Va. 530, 106 S.E.2d 611 (1959), relied upon by defendant, is distinguishable. There, at the instigation of the husband, who had that day initiated divorce proceedings, the sheriff, a cousin of the husband's broke down the door to the family home, served the wife with copies of the bill of complaint and an injunctive order, handcuffed the wife and forcibly removed her, clad in a house coat, from the premises. We held that this conduct constituted gross cruelty on the part of the husband which gave the wife ground for a divorce. The holding in *Brooks*, however, must be limited to the peculiar facts of that case.

On the record before us we hold that neither plaintiff nor defendant is entitled to a divorce. Accordingly, the decree, insofar as it awarded plaintiff a divorce, is reversed, and in all other respects is affirmed.

*Affirmed in part; reversed in part; and final decree.*