UPON A REHEARING EN BANC
KELSEY, Judge.
The trial court convicted Loren Anthony Mason, Jr., of various drug offenses[1] based upon evidence obtained during a traffic stop of a vehicle in which he was a passenger. Prior to trial, Mason moved to suppress the evidence, claiming that the traffic stop was unconstitutional. The trial court disagreed, denied the motion, and convicted Mason of the charged offenses.
On appeal, Mason challenges the trial court’s denial of his motion to suppress. A divided panel of this Court agreed with Mason, reversed the trial court’s ruling on the motion to suppress, and remanded the matter to the trial court. Mason v. Commonwealth, 63 Va.App. 587, 760 S.E.2d 831 (2014). We granted the Commonwealth’s petition for rehearing en banc, vacated the panel opinion, and now affirm the decision of the trial court.[2]
I.
We restate the facts “in the light most favorable to the Commonwealth, giving it the benefit of any reasonable infer *296 ences.” Glenn v. Commonwealth, 49 Va.App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc) (internal quotation marks omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). “In doing so, we consider facts presented both at the suppression hearing and at trial.” Elliott v. Commonwealth, 61 Va.App. 48, 51, 733 S.E.2d 146, 148 (2012).
In this case, a police officer testified that, while operating a stationary radar unit, he saw a sedan with a “dangling object” that was “hanging from the rearview mirror.” App. at 24. The officer testified that he “saw it clearly” as the vehicle “went by” him at “approximately 2:30 in the afternoon.” Id. at 21, 31. The object, reproduced below, was admitted into evidence.
*297 [[Image here]]
In his testimony, the officer identified this object as the “dangling object that [he] saw on that particular day.” Id. at 24. It is an opaque parking pass measuring five inches long and three inches wide. When asked if the dangling parking pass that he observed “could obstruct a driver’s view,” the officer replied unequivocally, “It could, yes, ma’am.” Id. at 31. Code § 46.2-1054 prohibits, among other things, any object from being “suspended from any part of the motor vehicle in such a manner as to obstruct the driver’s clear view of the *298 highway through the windshield, the front side windows, or the rear window.” Mason conceded in the trial court that the officer made a traffic stop of the sedan believing that “he was acting properly” pursuant to Code § 46.2-1054. Id. at 89.
At the time of the traffic stop, Mason was a passenger in the sedan. The officer intended to issue the driver a summons for driving without a seatbelt and for violating Code § 46.2-1054. Prior to issuing the summons, however, the officer asked the driver if he would consent to a “weapons” pat down. Id. at 58. The driver consented, and the officer found marijuana on the driver during the pat down.
The officer then searched the sedan and found a backpack containing cocaine, ecstasy pills, a “large sum of individually wrapped bags” of marijuana, id. at 130, a digital scale, and a box of plastic bags. Other evidence established that the backpack belonged to Mason. The officer then arrested Mason for possession of drugs. A search of Mason incident to his arrest yielded $3,381 in cash and a cell phone on his person.
Prior to trial, Mason sought to suppress all incriminating evidence gathered during the traffic stop on the basis that no officer could reasonably suspect that the parking pass violated Code § 46.2-1054. At the suppression hearing, the trial judge made various remarks from the bench suggesting his inclination to grant the motion to suppress. After making these remarks, however, the judge “asked for additional time to consider” the issue, id. at 101, and issued an order stating that the court needed “more time to deliberate on the motion to suppress,” id. at 98. The trial judge also took a “view of the scene,” id. at 101, to determine if the parking pass could obstruct a driver’s vision in a sedan similar to the one that the officer had stopped. See Oral Argument Audio at 9:47 to 9:55, 26:04 to 26:30 (Apr. 1, 2014) (stipulation of counsel).
At a later hearing, the judge advised counsel that he had reconsidered his earlier remarks.[3] He said that his initial *299 “concern” was that the parking pass did not “substantially obstruct” the driver’s view of the highway. App. at 102 (emphasis added). But after reviewing the caselaw “stacked up against [him],” the judge explained, he realized that neither the statute nor the reasonable suspicion standard required a substantial obstruction. Id. at 105. The case law he reviewed included an unpublished opinion from our Court, Commonwealth v. Bryant, No. 0076-04-1, 2004 WL 1313044, at *1, 2004 Va.App. LEXIS 283, at *4 (Va.Ct.App. June 15, 2004), which reversed a suppression order when an officer had stopped a vehicle displaying an “air freshener hanging from the rear view mirror” that “could” have obstructed the driver’s view in violation of Code § 46.2-1054. Accord Richardson v. Commonwealth, No. 0946-13-3, 2014 WL 1041799, at *1, 2014 Va.App. LEXIS 98, at *4, *11 (Va.Ct.App. Mar. 18, 2014) (upholding a traffic stop when the officer observed that an air freshener “could be in violation” of Code § 46.2-1054); Pegram v. Commonwealth, No. 1041-95-2, 1996 WL 537862, at *1, 1996 Va.App. LEXIS 611, at *2 (Va.Ct.App. Sept. 24, 1996) (validating a traffic stop pursuant to Code § 46.2-1054 given the officer’s observation of a “large cloth object” hanging from the rearview mirror).
Acknowledging that he “initially disagreed” with the view taken by these unpublished (and thus nonbinding) opinions, the trial judge explained that “what carrie[d] the day” was the definition of “obstruction.” App. at 105. “[Ujltimately it’s the *300 definition that persuaded the Court that that’s what the law is intended and that’s what the law says.” Id. Repudiating some of his earlier statements, the trial judge held:
[T]he Court is of the opinion that the standard for [the officer] to have stopped the vehicle was[:] is there reasonable suspicion that this object is ... cutting off from sight or blocking an unhampered, ... unrestricted view of the highway ? Well, there is reason to believe that it could be, because there is an object dangling. He is entitled constitutionally to investigate further. So the Court believes that the presence of the object is, in fact, sufficient reasonable suspicion to justify a detention of the vehicle.
Id. (emphasis added).[4] In short, the trial court explained, “Hit’s a parking pass, it’s not a driving pass.” Id. at 40.
II.
A. The Reasonable Suspicion Standard
Reasonable suspicion is simply suspicion that is reasonable. It is not something more than suspicion. And it can hardly be called proof. To be sure, the degree of certitude required by reasonable suspicion is “ ‘considerably less than proof of wrongdoing by a preponderance of the evidence,’ and ‘obviously less demanding than that for probable cause.’” Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)); see also Navarette v. California, — U.S. -, —, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014). Consequently, “the mere possibility of an innocent explanation does not necessarily exclude a reasonable suspicion that the suspect might be violating the law.” Morris *301 v. City of Va. Beach, 58 Va.App. 173, 183, 707 S.E.2d 479, 483 (2011) (internal quotation marks omitted).
No one can be arrested on the basis of reasonable suspicion. It serves merely to justify a brief detention to investigate. Because the need for justification is quite low, so too is the justifying legal standard. See 4 Wayne R. LaFave, Search & Seizure § 9.5(b), at 658-59 (5th ed.2012) (noting that reasonable suspicion requires merely “that there exists at the time of the stop a substantial possibility — or, indeed, even a ‘moderate chance’ — that [unlawful] conduct has occurred, is occurring, or is about to occur” (emphasis added) (footnotes omitted) (quoting Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 371, 129 S.Ct. 2633, 2639, 174 L.Ed.2d 354 (2009))).
In suppression hearings, a police officer usually takes the stand and describes what he saw and, occasionally, why he did what he did. While the first part is highly relevant, the second is not. “Examining the subjective intent of the officer ‘is fundamentally inconsistent with our Fourth Amendment jurisprudence,’ Kentucky v. King, — U.S. -, —, 131 S.Ct. 1849, 1859, 179 L.Ed.2d 865 (2011), because ‘the Fourth Amendment regulates conduct rather than thoughts,’ Ashcroft v. al-Kidd, — U.S.-,---, 131 S.Ct. 2074, 2080-81, 179 L.Ed.2d 1149 (2011) (noting narrow exceptions).” Washington v. Commonwealth, 60 Va.App. 427, 435, 728 S.E.2d 521, 525 (2012).
For these reasons, settled precedent governing Fourth Amendment cases has “repeatedly rejected a subjective approach.” Fernandez v. California, — U.S.-,-, 134 S.Ct. 1126, 1134, 188 L.Ed.2d 25 (2014) (internal quotation marks omitted); see also Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (holding that the officer’s “subjective motivation is irrelevant” (quoting Brigham City v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 1948, 164 L.Ed.2d 650 (2006))). A police officer’s “action is ‘reasonable’ under the Fourth Amendment, regardless of the individual officer’s state of mind, ‘as long as the circumstances, viewed objectively, justify the action.’ ” Stuart, 547 U.S. at 404, 126 S.Ct. at 1948 (brackets omitted) (quoting Scott v. United States, 436 *302 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)); see also Navarette, — U.S. at-, 134 S.Ct. at 1687; Maryland v. Macon, 472 U.S. 463, 470-71, 105 S.Ct. 2778, 2782-83, 86 L.Ed.2d 370 (1985).[5] Consequently, an “officer’s subjective characterization of observed conduct is not relevant ” to an objective application of the Fourth Amendment. Jones v. Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010) (emphasis added and internal quotation marks omitted); see also Stuart, 547 U.S. at 404, 126 S.Ct. at 1948.[6]
Because courts “do not examine the subjective understanding of the particular officer involved,” Heien v. North Carolina, — U.S.-,-, 135 S.Ct. 530, 539, 190 L.Ed.2d 475 (2014), it necessarily follows that, when deciding a suppression motion, a court should not limit itself “to what the stopping officer says or to evidence of his subjective rationale,” Raab v. Commonwealth, 50 Va.App. 577, 583 n. 2, 652 S.E.2d 144, 148 n. 2 (2007) (en banc) (quoting United States v. Brown, 232 F.3d 589, 594 (7th Cir.2000)).[7] Courts should instead “look to the record as a whole to determine what facts *303 were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious.” LaFave, supra, § 9.5(a), at 647 n. 22 (quoting United States v. McKie, 951 F.2d 399, 402 (D.C.Cir.1991)). Because the reasonable suspicion test “is purely objective,” the reasonable suspicion standard imposes “no requirement that an actual suspicion by the officer be shown.” Id. § 9.5(a), at 647 (second emphasis added). This approach “is obviously far preferable to a system based on the suppositions of individual officers.” Fox v. Commonwealth, 43 Va.App. 446, 450, 598 S.E.2d 770, 772 (2004).
We thus reject Mason’s contention that an officer making an investigatory stop must actually articulate, from the witness stand, the articulable facts and then explain, in his personal opinion, why these facts prompted him to be suspicious. Any assertion to the contrary is inconsistent with prior en banc precedent from our Court, Raab, 50 Va.App. at 583 n. 2, 652 S.E.2d at 148 n. 2, as well as the uniform view among courts that have addressed this issue.[8]
B. Obstructing a Driver’s “Clear View op the Highway”
Code § 46.2-1054 prohibits, among other things, any object[9] from being “suspended from any part of the motor vehicle in such a manner as to obstruct the driver’s clear view of the highway through the windshield, the front side windows, or the rear window.” Applied to a sedan, this portion of the *304 statute has three components: (i) something “suspended” (ii) that serves to “obstruct” a “clear view of the highway” (iii) through the windshield, the front side windows, or the rear window. Id.
By statute, a highway includes “the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys.” Code § 46.2-100 (emphasis added). A highway is not, as Mason presumes, simply the stretch of pavement immediately in front of a driver’s vehicle. Under Virginia law, a “highway” is not limited “to a hard-surfaced or partly hard-surfaced way or to a dirt and gravel way. It does not confine a highway to the main-travelled portion of the way or to lanes specifically designated for vehicular traffic.” Crouse v. Pugh, 188 Va. 156, 164-65, 49 S.E.2d 421, 426 (1948); see also Jessee v. Slate, 196 Va. 1074, 1083, 86 S.E.2d 821, 826 (1955).
Because a “highway” includes the “entire width between the boundary lines” of the “way or place” used by vehicular traffic, Code § 46.2-100, it includes overhead highway signs,[10] on-ramps and off-ramps, merge lanes, deceleration lanes, roadways,[11] bridges,[12] intersections,[13] shoulders,[14] *305 pedestrian crosswalks,[15] and shared-use paths.[16] Thus, a “clear view of the highway,” as used in Code § 46.2-1054, no doubt means the pavement itself and everything physically on it. It would make no sense for Code § 46.2-1054 to prohibit a dangling object from obstructing a driver’s view of the pavement directly in front him but not a vehicle, bicyclist, or pedestrian[17] moving across that same pavement.
In this case, the police officer testified that he “clearly” observed the parking pass prior to stopping the vehicle. App. at 31. The parking pass is an exhibit. We need no description of it from the officer. We are looking at the very thing that the officer said he clearly saw: an opaque plastic card that is five inches long and three inches wide. And the trial judge had something even better. He took a “view of the scene” to determine if the parking pass could obstruct a driver’s vision in a vehicle similar to the one that the officer had stopped. Id. at 101; see Oral Argument Audio at 9:47 to 9:55, 26:04 to 26:30 (Apr. 1, 2014).
Given these facts, we agree with the trial court that a reasonable officer could suspect that the opaque, five-by-three-inch parking pass dangling from a rearview mirror might violate Code § 46.2-1054 and thus warrant an investigatory stop. Several scenarios illustrate why. The bottom of the parking pass would be at or slightly above eye level for a driver of average height. The parking pass could be at an angle that might partially block a driver’s clear view of a *306 vehicle ahead and to the right of him. If that vehicle put on its left-turn signal, for example, the driver with the parking pass might not see it at all — particularly when the vehicle is merging into highway traffic from an on-ramp. If a driver simply wanted to make a right turn at an intersection, the parking pass could partially obscure his field of vision. An enhanced risk would exist when the driving occurs at night, and only the taillights of a vehicle ahead and to the right are visible. Consider, too, highway signs that are often placed overhead and on the right shoulder of the highway. A person of any height could have his clear view of highway signs partially obstructed by the parking pass, especially during nighttime driving.
It bears repeating that an officer need not have proof beyond a reasonable doubt of any of these scenarios before he makes a vehicular stop. Nor does he need to be convinced by a preponderance of the evidence. To be sure, the quantum of confidence need not even rise to the level of probable cause. See Perry, 280 Va. at 581, 701 S.E.2d at 436. It is enough that the officer is aware of facts that, viewed objectively, could give rise to a reasonable suspicion that the parking pass may be non-compliant with Code § 46.2-1054. Settled precedent has “consistently recognized that reasonable suspicion ‘need not rule out the possibility of innocent conduct.’ ” Navarette, — U.S. at -, 134 S.Ct. at 1691 (quoting United States v. Arvizu, 534 U.S. 266, 277, 122 S.Ct. 744, 753, 151 L.Ed.2d 740 (2002)). In this respect, the law employs a “commonsense approach,” id. at -, 134 S.Ct. at 1690, that takes into account “the totality of the circumstances — the whole picture,” id. at-, 134 S.Ct. at 1687 (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)), and asks simply whether unlawful activity “may be afoot,” id. at-, 134 S.Ct. at 1690 (quoting Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)).
Mason does not directly challenge these principles. Instead, underlying much of his argument is the unstated, but implied, assertion that this type of traffic infraction is simply too trifling to warrant an investigatory stop. Underlying *307 Code § 46.2-1054, however, is the General Assembly’s unstated, but implied, recognition that a driver’s ability to see clearly through an unobstructed windshield is crucial to the safety of the driver as well as others sharing the road. We certainly concur. At some point in every trial judge’s career, he or she has heard a confounded witness, while testifying about a tragic automobile accident, say simply, “I don’t know what happened. I just didn’t see the other car.” Given the multitude of other distractions competing for a driver’s attention, it hardly makes sense for the law to treat as trivial the perfectly reasonable suspicion that a five-by-three inch opaque parking pass, hanging from the rearview mirror of a sedan, could obstruct a driver’s clear view of the highway.[18]
Needless to say, our holding does not endorse any per se rule authorizing traffic stops whenever an object of any kind is observed dangling from a vehicle’s rearview mirror. While the prosecutor asserted as much in the trial court, see id. at 53, the Attorney General correctly disavowed the overstatement on appeal, see Oral Argument Audio at 14:56 to 15:10, 16:22 to 16:57 (Nov. 18, 2014). Code § 46.2-1054, after all, does not uniformly forbid drivers from dangling objects from their rearview mirrors — only those positioned “in such a manner as to obstruct the driver’s clear view of the highway.” We thus limit our holding to the suspected obstruction in this case: a five-by-three-inch opaque parking pass hanging from a rearview mirror of a sedan.
*308 Finally, we acknowledge that the application of the concept of reasonable searches and seizures to Code § 46.2-1054’s prohibition on dangling obstructions involves an inescapable exercise in judicial line-drawing. But, as Justice Holmes once said, we should not be “troubled by the question where to draw the line. That is the question in pretty much everything worth arguing in the law.” Irwin v. Gavit, 268 U.S. 161, 168, 45 S.Ct. 475, 476, 69 L.Ed. 897 (1925). That we must, from time to time, make fine distinctions is no reason to abandon the task altogether[19] and treat all such dangling objects as indistinguishable. A five-by-three inch opaque parking pass is obviously different from a high school graduation tassel or a tiny chain locket. We thus have no fear that our holding will be misconstrued as a constitutional blank check for police officers to make traffic stops under circumstances wholly dissimilar from those presented in this case.[20]
III.
In sum, the trial court correctly held that a reasonable officer could make an investigatory stop of the sedan in this case to determine if, in fact, the parking pass he observed violated Code § 46.2-1054.[21] Finding no fault with the trial *309 court’s denial of Mason’s motion to suppress, we affirm his convictions.

Affirmed.

. These offenses include distribution of marijuana, Code § 18.2-248.1; possession of a Schedule I or II controlled substance, Code § 18.2-250; and possession of a Schedule I or II controlled substance with the intent to distribute, Code § 18.2-248.

. On January 1, 2015, Judge Huff succeeded Judge Felton as chief judge. Justice Kelsey prepared and the Court adopted the opinion in this case prior to his investiture as a Justice of the Supreme Court of Virginia. Judge Felton and Judge Frank participated in the hearing and decision of this case prior to the effective date of their retirements on December 31, 2014.

. The trial judge’s initial comments were superseded by the court’s ultimate ruling and contemporaneous explanation for it. It is the *299 court’s holding' — not the judge's off-the-cuff remarks from the bench— that accompanies the final order on appeal to us. Viewed in context, none of the judge’s initial remarks (which he later explained were based upon an inaccurate legal standard) can be fairly deemed “factual findings.” Infra at 313-14, 767 S.E.2d at 737. Mason’s argument to the contrary presents a good example of why ”[w]e are particularly skeptical ... of appellate efforts to piece together ... fragmented remarks from the bench” in an effort to undermine the court's ultimate holding, White v. White, 56 Va.App. 214, 218, 692 S.E.2d 289, 291 (2010), and why we traditionally decline the invitation to "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied,” Damon v. York, 54 Va.App. 544, 555, 680 S.E.2d 354, 360 (2009) (internal quotation marks omitted).

. The trial judge had acknowledged earlier that “the question we have now is [whether there] is reasonable suspicion to believe that there is a traffic infraction taking place[.] So again, is there reasonable suspicion to believe that [the parking pass] is obstructing ... the driver’s clear view of the highway through the windshield? ” App. at 40-41 (emphasis added); see also id. at 84.

. So strong is this principle that, even when an officer’s testimony shows that he misjudged the legal basis for the stop, his subjective misjudgment does not undermine the objective validity of a stop that could be based on a wholly different legal basis. See, e.g., Slayton v. Commonwealth, 41 Va.App. 101, 109, 582 S.E.2d 448, 451-52 (2003) (applying this principle to arrests); McGuire v. Commonwealth, 31 Va.App. 584, 596-97, 525 S.E.2d 43, 49 (2000) (same); Golden v. Commonwealth, 30 Va.App. 618, 625, 519 S.E.2d 378, 381 (1999) (same).

. See also Bond v. United States, 529 U.S. 334, 338 n. 2, 120 S.Ct. 1462, 1465 n. 2, 146 L.Ed.2d 365 (2000); Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996); Scott, 436 U.S. at 138, 98 S.Ct. at 1723-24; United States v. Johnson, 734 F.3d 270, 275 (4th Cir.2013); United States v. Singh, 363 F.3d 347, 356 (4th Cir.2004); United States v. McKie, 951 F.2d 399, 402 (D.C.Cir.1991); Harris v. Commonwealth, 276 Va. 689, 697, 668 S.E.2d 141, 146 (2008); Robinson, 273 Va. at 37-38, 639 S.E.2d at 223-24.

. See Washington, 60 Va.App. at 434, 728 S.E.2d at 525; Shifflett v. Commonwealth, 58 Va.App. 732, 736 n. 2, 716 S.E.2d 132, 135 n. 2 (2011); Morris, 58 Va.App. at 179, 707 S.E.2d at 481; Thomas v. Commonwealth, 57 Va.App. 267, 273-75, 701 S.E.2d 87, 90-91 (2010); Armstead v. Commonwealth, 56 Va.App. 569, 579 n. 7, 695 S.E.2d 561, 565 n. 7 (2010).

. See, e.g., United States v. Bailey, 622 F.3d 1, 5-6 (D.C.Cir.2010); Brown, 232 F.3d at 594; United States v. Ozbirn, 189 F.3d 1194, 1198—99 (10th Cir.1999); United States v. Swann, 149 F.3d 271, 272 (4th Cir.1998); United States v. Jones, 990 F.2d 405, 408 (8th Cir.1993); McKie, 951 F.2d at 402; United States v. Causey, 834 F.2d 1179, 1183—84 (5th Cir.1987); United States v. Hawkins, 811 F.2d 210, 213 (3d Cir.1987); State v. Heminover, 619 N.W.2d 353, 357 (Iowa 2000), abrogated on other grounds by State v. Turner, 630 N.W.2d 601, 606 n. 2 (Iowa 2001); Zimmerman v. N.D. Dep't of Transp. Dir., 543 N.W.2d 479, 482-83 (N.D. 1996).

. Code § 46.2-1054 expressly exempts the "rear view mirror, sun visor, or other equipment of the motor vehicle approved by the Superintendent [of the Department of State Police].” See also Code § 46.2-1005 ("Procedure for approval of equipment”).

. See Code § 46.2-100 (defining a “traffic control device" as "a sign, signal, marking, or other device used to regulate, warn, or guide traffic placed on, over, or adjacent to a ... highway”).

. A "roadway,” narrower in scope than a highway yet still broad in terms of the surface area it includes, is defined as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the shoulder.” Id. A highway may itself "include two or more roadways.” Id.

. See Nelson v. Cnty. of Henrico, 10 Va.App. 558, 561, 393 S.E.2d 644, 646 (1990).

. See Code § 46.2-100 (defining “intersection” as certain areas of highways that "join one another,” cross an "intersecting highway,” or are crossed "by a pedestrian crosswalk”).

. A "shoulder” is defined as "that part of a highway between the portion regularly traveled by vehicular traffic and the lateral curbline or *305 ditch.” Id. (emphasis added); .see also lessee, 196 Va. at 1083, 86 S.E.2d at 826.

. See Code § 46.2-100 (defining "crosswalk” as a "part of a roadway,” which is part of a highway); see also supra note 13 (defining "intersection”).

. "Shared-use paths” include bikeways and other paths that are open to “pedestrians, skaters, users of wheel chairs or wheel chair conveyances, joggers, and other nonmotorized users.” Code § 46.2-100.

. See Crouse, 188 Va. at 165, 49 S.E.2d at 426 ("The Motor Vehicle Code of Virginia recognizes the right of both the pedestrian and motorist to use the highways for travel.”).

. The dissent argues that the officer’s "failure to investigate the existence of the alleged 'criminal activity’ is fatal to any justification of Mason’s seizure under Terry and its progeny.” Infra at 312, 767 S.E.2d at 736. Mason, however, never made that contention on appeal. To quote him: "In the instant case the only assignment of error is the failure of the trial judge to grant the defendant's motion to suppress evidence seized from the motor vehicle in which the defendant was riding following a traffic stop, alleging that the officer in question did not have reasonable suspicion to make such stop." Appellant's Br. at 6 (emphasis added). See Rule 5A:12(c)(1)(i) (limiting appellate review to the assignment of error); Rule 5A:20(e) (requiring appellants to state clearly their "argument (including principles of law and authorities) relating to each assignment of error”).

. As for the criticism that this line-drawing exercise requires a case-by-case approach, "truth be told, it is supposed to be this way. The reasonable suspicion standard itself is a 'somewhat abstract’ and 'elusive concept’ that cannot be reduced to a ‘neat set of legal rules.’ ” Shifflett, 58 Va.App. at 739, 716 S.E.2d at 136 (quoting Arvizu, 534 U.S. at 274, 122 S.Ct. at 751).

. We agree with our dissenting colleagues that, even if Mason could challenge successfully the legality of the officer’s stop of the sedan, that victory would not necessarily require the suppression of any incriminating evidence found during the officer’s ensuing consensual searches of the driver or the sedan. See generally Ellis v. Commonwealth, 52 Va.App. 220, 226, 662 S.E.2d 640, 643 (2008) ("Our analysis begins with the general rule that 'a search authorized by consent is wholly valid.'" (quoting Kyer v. Commonwealth, 45 Va.App. 473, 483, 612 S.E.2d 213, 218 (2005) (en banc))).

. On appeal, Mason argues that the officer’s alleged reasonable suspicion was “based on a misapprehension of the law” and, for that reason, "was thus per se unreasonable and thus could not be the basis of a valid *309 investigatory stop...." Appellant’s Br. at 8. The United States Supreme Court, however, recently rejected this very argument. Heien, — U.S. at-, 135 S.Ct. at 539. Given our holding, we need not address the dissent’s effort to distinguish Heien. Infra at 315-19, 767 S.E.2d at 738-40.