THELONIUS L. JONES, A/K/A TONY BROWN

V.

COMMONWEALTH OF VIRGINIA

Record No. 841091

September 6, 1985

Present: All the Justices

*Michael P. Weatherbee* for appellant.
*Eugene Murphy, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

The defendant, Thelonius L. Jones, was charged in a warrant with failing to identify himself at the request of a police officer in violation of § 17-13(c) of the Arlington County Code. Jones was

also charged in an indictment with possessing heroin with intent to distribute in violation of Va. Code § 18.2-248.

Tried by the court without a jury, Jones was convicted of both offenses and sentenced to thirty days' confinement in jail on the misdemeanor charge and twenty years' imprisonment in the penitentiary, with ten years suspended, on the felony charge. We granted this appeal to review (1) the constitutionality of Arlington Code § 17-13(c), and (2) the trial court's denial of Jones' motion to suppress the heroin as the product of an illegal search.

The record shows that on the evening of August 10, 1983, Officer Noel Edward Hanrahan of the Arlington County Police Department was patrolling in the Crystal City area of the county "with specific references to some burglaries that had been occurring in the area." Hanrahan had been alerted at his afternoon roll call to be on the lookout for a suspect described as "a black male in his 20's, 5'10", 175, with a husky build, dark complexion, and in one incident [was] wearing shorts and a T-shirt [and in] another . . . was . . . wearing a jogging suit [and] carrying a large knapsack like bag, possibly a duffel bag."

Shortly after 8:00 p.m., Hanrahan observed Jones emerging from a garage at the rear of a Crystal City hotel, some 300 yards from the scene of one of the recent burglaries. Jones matched the physical description Hanrahan had been given of the suspect and in addition was dressed in a jogging suit and was carrying two duffel bags. Jones appeared to be looking for "something or someone." He walked to a nearby convenience store, went in, and came out within twenty seconds. He returned to the vicinity of the hotel garage, where Hanrahan approached him.

Hanrahan identified himself as a police officer and told Jones he fit the description of the person suspected of committing recent burglaries in the area. Hanrahan "patted . . . down" both Jones' person and his duffel bags. Feeling some hard objects in one of the bags, Hanrahan unzipped the bag and found a camera and a set of headphones, but no weapons. Hanrahan searched no further at the time.

Hanrahan asked Jones for identification and was handed "a commercially made up I.D. card," which appeared to have been "tampered with." The card bore the name Tony N. Brown, an address, and a Social Security number. Hanrahan asked Jones his middle name, and Jones said he had none. When asked his address, Jones gave a location different from the one on the card and

could not explain the discrepancy. When asked his Social Security number, Jones first gave a number different from the one listed on the card and then corrected himself and recited the listed number.

Hanrahan also asked Jones where he applied for the Social Security number listed on the card, and Jones said, "Washington, D.C." Hanrahan knew, however, that the number on the card, as well as others with the same prefix, had been issued in the state of New York.

Hanrahan placed Jones under arrest for failing to provide identification as required by the Arlington County Code. Hanrahan then went through Jones' bags "seeking additional information for positive identification." In the course of this search, Hanrahan found "several packs of white powder" and placed a charge against Jones of possessing drugs. Upon analysis, the white powder "turned out to be heroin."

On appeal, Jones seeks reversal of both his convictions. He says that the convictions depend for their validity upon § 17-13(c) of the Arlington County Code, that the code provision is unconstitutional and, hence, that the convictions are erroneous.

Section 17-13 of the Arlington County Code is entitled "Loitering—Peace and good order." Subsection (c) provides:

It shall be unlawful for any person at a public place or place open to the public to refuse to identify himself by name and address at the request of a uniformed police officer or of a properly identified police officer not in uniform, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety requires such identification.

Jones argues that § 17-13(c) is unconstitutional because it is "[v]iolative of Fourth Amendment Rights." The code section "allows police to stop citizens without any reasonable suspicion that the individual is involved in criminal activity," Jones asserts, and "does not require the police officer to have even an articulable suspicion that the individual detained is involved in, has committed, or is about to commit a crime." Jones concludes that, because it was unlawful for the police to detain and question him, his arrest for violating § 17-13(c) was also unlawful and, because the heroin

was the fruit of the unlawful arrest, the evidence concerning the drug should have been suppressed.[1]

We disagree with Jones. As the Attorney General points out, § 17-13(c) does not purport to authorize a police officer to stop and question an individual on the street. Rather, as the Attorney General indicates further, criminal liability for failure to furnish identification under § 17-13(c) arises only when some independent basis justifies the detention and questioning of an individual in the first place, for example, "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry* v. *Ohio*, 392 U.S. 1, 30 (1968).

The Commonwealth has relied upon *Terry*, rather than § 17-13(c), both in the trial court and here, to justify Officer Hanrahan's detention and questioning of Jones. We believe this reliance is fully warranted.

*Terry* permits a police officer, even without probable cause, to stop and question an individual on the street, provided the officer has a reasonable suspicion, based upon objective facts, that the individual is involved in criminal activity. 392 U.S. at 21-23. The objective facts known to the officer in this case support a *Terry* stop. At his afternoon roll call, Officer Hanrahan had been given a report of recent burglaries in the area, including one that had occurred only a day or two before the incident in question. Hanrahan also had been given a description of the suspect's physical appearance and of the clothes he wore and the luggage he carried.

Jones matched the physical description of the suspect, and he wore clothes and carried luggage of the same type as those worn and carried by the suspect. Jones' behavior after emerging from the hotel garage was sufficiently suspicious, in the language of *Terry*, to " 'warrant a man of reasonable caution in the belief,' " *id*. at 22, that "criminal activity may be afoot," *id*. at 30, and that "the action taken [in stopping Jones] was appropriate," *id*. at 22. Indeed, employing other language of *Terry*, "[i]t would have been

---

[1] In this appeal, we consider only Jones' arguments based upon the Fourth Amendment. Jones also argues on appeal that § 17-13(c) of the Arlington County Code violates his First Amendment "right to remain silent" and his Fifth Amendment right against self-incrimination, but he did not raise these points in the trial court, and we will not consider them here. Rule 5:25. Neither will we consider any contention with respect to § 17-13(c) which Jones may have made in the trial court but has not pursued here. Rule 5:25.

poor police work . . . for an [experienced] officer [with knowledge of the burglaries] in this same neighborhood to have failed to investigate this behavior further." *Id.* at 23.

■ *Terry* also permits a police officer who has stopped an individual on reasonable suspicion of criminal behavior to frisk the suspect for weapons if the officer reasonably believes the suspect may be armed and dangerous. *Id.* at 30. Jones tacitly concedes that if Officer Hanrahan had grounds to stop him in the first place, the pat-down of his person and his bags was proper. Jones argues, however, citing *Terry*, that when the pat-down revealed no weapons or evidence of crime, it was a violation of his Fourth Amendment rights for Hanrahan to detain and question him further.

Jones reads *Terry* too narrowly. The Supreme Court explained in *Terry* that a police officer may stop a person in appropriate circumstances "for purposes of investigating possibly criminal behavior," *id.* at 22, and in the course of the investigation may make "reasonable inquiries," *id.* at 30. In further explication, the Court stated in *Adams* v. *Williams*, 407 U.S. 143 (1972), that *Terry* permits "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information." *Id.* at 146.

Nothing in *Terry* or its progeny indicates that the authority of a police officer to make "reasonable inquiries," to "determine [a suspect's] identity," and to obtain "more information" from or about a suspect depends in any way upon whether a pat-down reveals weapons or evidence of crime. We believe that *Terry* gave Officer Hanrahan full authority to question Jones about his identity, regardless of the outcome of the pat-down.

■ Neither can we find any support in *Terry* or its progeny for Jones' further argument that Officer Hanrahan's authority to question him about his identity terminated when he handed Hanrahan an identification card. To the contrary, in full accord with *Terry*, we believe the fact the card had been "tampered with" indicated that "something was awry and created even more reason for the investigation [into Jones' identity] being pursued further." *United States* v. *Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974), *cert. denied*, 420 U.S. 924 (1975). Then, "[f]ollow-up questions were made necessary by [the] unconvincing and suspicious answers" Jones gave when Hanrahan pursued the investigation fur-

ther. *United States* v. *Bautista*, 684 F.2d 1286, 1291 (9th Cir. 1982), *cert. denied*, 459 U.S. 1211 (1983).

■ Because *Terry* provides a complete, independent basis for the detention and questioning of Jones, we are inclined to agree with the Attorney General that § 17-13(c) of the Arlington County Code does not "violate or even implicate the Fourth Amendment." Jones argues, however, that *Kolender* v. *Lawson*, 461 U.S. 352 (1983), dictates a different result.

■ The criminal statute struck down in *Kolender* was "not simply a 'stop-and-identify' statute," *id.* at 359, but, as interpreted by the California Court of Appeals, one requiring an individual to provide "a 'credible and reliable' identification that carries a 'reasonable assurance' of its authenticity, and that provides 'means for later getting in touch with the person who has identified himself.' " *Id.* Of more serious import, the individual could also be required under the statute to "account for his presence 'to the extent it assists in producing credible and reliable identification.' " *Id.* at 359-60.

We do not interpret § 17-13(c) of the Arlington County Code as broadly as the California court interpreted the California statute. While a suspect may violate § 17-13(c) by giving false information concerning his identity, as occurred here, the code section does not require an identification that "provides 'means for later getting in touch with the person who has identified himself,' " and it certainly does not require him to "account for his presence."

Furthermore, the attack upon the California statue was based upon Fourteenth Amendment due process grounds, while the attack here is based upon Fourth Amendment search and seizure grounds. The Supreme Court sustained the due process attack, but indicated that the California statute would have been violative of Fourth Amendment rights only if it were interpreted "to permit investigative detentions in situations where the officers lack a reasonable suspicion of criminal activity based on objective facts." 461 U.S. at 356 n.5. As previously noted, we interpret § 17-13(c) of the Arlington County code to permit a detention only upon reasonable suspicion of criminal activity based upon objective facts.

For this latter reason, *Brown* v. *Texas*, 443 U.S. 47 (1979), also cited by Jones, is inapposite. In *Brown*, the Supreme Court reversed a conviction under a Texas statute which made it "an offense if [one] intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has law-

fully stopped him and requested the information." *Id.* at 49 n.1. The reversal, however, was not based upon a finding that the statute was invalid but upon the finding that "none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct." *Id.* at 51-52. Indeed, the court found it unnecessary to "decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." *Id.* at 53 n.3.

■ We now follow our earlier inclination and uphold the validity of § 17-13(c) against Jones' Fourth Amendment attack. It follows that Jones' arrest for violation of § 17-13(c) was lawful and that the search of his bags, which revealed the presence of heroin, was valid as incident to a lawful arrest.[2] But, even if we were to hold § 17-13(c) unconstitutional today, the finding that the search was valid would still stand.

In *Michigan* v. *DeFillippo*, 443 U.S. 31 (1979), the accused gave inconsistent and evasive answers to a police officer's request for identification. The accused was arrested for violating an ordinance of the City of Detroit which provided that a police officer may stop and question a person if the officer has reasonable cause to believe the person's behavior "warrants further investigation for criminal activity." *Id.* at 33 n.1. The ordinance also made it unlawful for any person stopped thereunder to refuse to identify himself and produce documentary or other evidence of identity. In a search of his person, the accused was found to possess a con-

---

[2] Citing *Illinois* v. *Lafayette*, 462 U.S. 640 (1983), Jones argues that his Fourth Amendment rights were also violated by Officer Hanrahan's "extensive on the street search of [Jones'] luggage." The search was "embarrrasingly intrusive," Jones says, because his "underwear [and] that type of thing [were] strewn out over the street." Under *Lafayette*, Jones maintains, the search should have been conducted at the station house and, because it was not, the evidence seized as a result of the search should have been excluded.

We disagree with Jones. In the first place, there is not one word of testimony in the record indicating that any of Jones' personal belongings were "strewn out over the street." Furthermore, *Lafayette* does not say that a search incident to a lawful arrest may not be conducted on the scene. The case involved a station house inventory search. All the case actually stands for is contained in this one sentence: "At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." *Id.* at 646. The "embarrassingly intrusive" language Jones quotes is found in this dictum: "Police conduct that would be impractical or unreasonable—or embarrassingly intrusive—on the street can more readily—and privately—be performed at the station." *Id.* at 645.

trolled drug, and he was charged with its possession, but not with violating the Detroit ordinance.

The trial court refused to suppress the evidence found in the search of the accused. The Michigan Court of Appeals reversed, holding that the Detroit ordinance was unconstitutionally vague, that the arrest of the accused pursuant thereto was unlawful, and that the search was therefore invalid. The Michigan Supreme Court denied leave to appeal. The United States Supreme Court granted certiorari to review the holding below that "evidence should be suppressed on federal constitutional grounds, although it was obtained as a result of an arrest pursuant to a presumptively valid ordinance." *Id.* at 35.

The Supreme Court reversed, holding that the arresting officer had abundant probable cause to believe the accused had violated the Detroit ordinance, *id.* at 36, that the ordinance was presumptively valid and remained valid until declared otherwise, *id.* at 37-38, and that the officer was not required to anticipate the ordinance would later be declared unconstitutional, *id.* The Court concluded that the search which followed the arrest was valid because incidental to a valid arrest and that this conclusion was unaffected by the fact the ordinance was subsequently declared unconstitutional. *Id.* at 40.

After the decision in *DeFillippo*, the United States Court of Appeals for the Fourth Circuit considered the validity of an arrest made under § 17-13(c) of the Arlington County Code, the very subsection now under consideration. In *United States* v. *LeFevre*, 685 F.2d 897 (4th Cir. 1982), the accused was arrested for a violation of § 17-13(c). A search of his person revealed a dangerous weapon, for the possession of which he was charged and convicted under a federal statute.

The accused contended that § 17-13(c) was unconstitutional and, accordingly, that his arrest and the search of his person were invalid. The Fourth Circuit, however, relying upon *DeFillippo*, upheld the arrest and search without deciding the constitutional issue. The Court stated that the arresting officer had "acted in good faith . . . reliance on the validity of . . . Section 17-13c and for this reason [the Court] need not address its constitutionality." 685 F.2d at 901.

Here, the record is abundantly clear that Officer Hanrahan acted in good faith reliance upon the validity of § 17-13(c) in effecting the arrest of Jones for refusing to identify himself. The search

incident to the arrest would have been valid, therefore, regardless of the ultimate outcome of Jones' attack upon the constitutionality of § 17-13(c).

For the reasons assigned, we will affirm both of Jones' convictions.

*Affirmed.*