COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Alston and Senior Judge Felton
Argued at Alexandria, Virginia


WILLIAM EDWARD FREEMAN, JR.

                                                            OPINION BY
v.        Record No. 2302-14-4                    JUDGE WILLIAM G. PETTY
                                                          NOVEMBER 17, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CLARKE COUNTY
Ronald L. Napier, Judge*

        David A. Downes for appellant.

        Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
        Herring, Attorney General, on briefs), for appellee.


        After entering a conditional guilty plea under Code § 19.2-254, William Edward

Freeman, Jr. now appeals the trial court's denial of his motions to suppress evidence.  The

evidence was obtained after law enforcement officers stopped him on suspicion of having objects

hanging from his rearview mirror that obstructed his clear view of the highway, in violation of

Code § 46.2-1054.[1]  Freeman argues that no reasonable suspicion existed to support the stop

because the law enforcement officers did not articulate objective facts in addition to the presence

of the dangling objects to support the suspicion that the objects blocked Freeman's clear view of

the highway.  Additionally, Freeman argues Code § 46.2-1054 could not have provided the basis

_____

        * Judge Napier issued the sentencing order on December 22, 2014.  However, Judge John
E. Wetsel, Jr. presided over the motions to suppress at issue in this case.

        [1] Freeman was convicted of felony possession of a Schedule II substance, in violation of
Code § 18.2-250, and felony possession of a firearm while in possession of a Schedule II
substance, in violation of Code § 18.2-308.4.  Because Freeman only challenges the reasonable
suspicion for the stop, we limit our review to that issue.

for reasonable suspicion because it is unconstitutionally vague. For the reasons set forth below, we affirm the conviction.

## I. BACKGROUND

When reviewing the trial court's ruling denying a defendant's motion to suppress evidence, this Court considers the evidence in the light most favorable to the Commonwealth and "'accord[s] the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008) (quoting Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 541, 545 (2001)).

On March 7, 2014, three law enforcement officers from the Frederick County Sheriff's Office were conducting surveillance of Freeman in connection with a drug investigation. When Freeman left his residence and drove away, the officers followed. One of the officers, Investigator Kahle, testified they were close enough to see Freeman's face in the side view mirror. Additionally, Investigator Kahle looked through the back window of the vehicle and saw multiple objects dangling from the rearview mirror. He testified that there appeared to be two or three objects clumped together so that he could not determine a single shape. The size alone of the clumped objects caused Investigator Kahle to be concerned that the objects might impair or obstruct Freeman's view of the highway in violation of Code § 46.2-1054. The officers stopped Freeman to investigate. Investigator Kahle took photographs of the air fresheners, and copies of those photographs were introduced into evidence. The pictures reveal a cluster of several air fresheners, one of which appears to be a replica of a hand grenade, which hung from the rearview mirror down to the dashboard of the car.

Freeman made two motions to suppress the evidence. The first motion argued that there was no reasonable suspicion for the stop because the officers had no objective basis for believing a traffic infraction had occurred. Freeman argued in that motion that the trial court

must make the factual determination of the location of the object in the car and based on the observations of the police officer of the driver's height, seating position, size of the object, and topography of the highway would have caused the object to obstruct the [sic] his clear view of the highway.

Freeman subsequently made a second motion to suppress, which argued that Code § 46.2-1054 is unconstitutional. He argued that the statute is void for vagueness because persons of common intelligence must necessarily guess at which objects the statute prohibits.

The trial court denied both motions. It found the officers had reasonable suspicion to stop Freeman for violation of Code § 46.2-1054. It reasoned "absolutely that this amount of material of this width . . . would 'obstruct the driver's vision in any car in America' in which they are making a right hand turn. So it clearly falls within the clear purview of the statute as it is drafted." The court found an additional basis for reasonable suspicion because one of the objects looked like a hand grenade, the possession of which violates Code § 18.2-85.[2]

Further, the court denied Freeman's "void for vagueness" argument. It reasoned that this Court has declined to address the constitutionality of the statute when this Court has reviewed cases where reasonable suspicion for a traffic stop was founded on the officer's observation of an object hanging from the rearview mirror.

Freeman then entered a conditional guilty plea.

_____

[2] Code § 18.2-85 provides in relevant part,

Any person who . . . manufactures, transports, distributes, possesses, or uses . . . explosive materials or devices shall be guilty of a Class 5 felony. Any person who constructs, uses [or] places . . . any hoax explosive device so as to intentionally cause another person to believe that such device is a bomb or explosive shall be guilty of a Class 6 felony.

II.  ANALYSIS

Freeman now appeals on two grounds the denial of his motions to suppress.  First, he argues the trial court erred by not finding the statutory language of Code § 46.2-1054 unconstitutionally vague.  Second, he argues the

> trial court erred by finding that the police officer had reasonable articulable suspicion to stop the vehicle operated by Freeman based on air fresheners suspended from the rearview mirror without identifying any objective facts, but for the air fresheners themselves, to suspect that the objects obstructed the driver's clear view of the highway.

We address the second assignment of error first.

A.  REASONABLE SUSPICION THAT FREEMAN WAS IN VIOLATION OF CODE § 46.2-1054

A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that the Court reviews *de novo* on appeal.  Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002).  Specifically, "determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."  Ornelas v. United States, 517 U.S. 690, 699 (1996).  "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 497 S.E.2d 259, 261 (1997) (*en banc*).

"'[W]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief.'"  Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (*en banc*) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)).  Therefore, "[i]n order to justify an investigatory stop of a vehicle, [an]

officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity." Id.

A police officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (alteration in original) (quoting Brigham City v. Stuart, 547 U.S. 398, 404 (2006)).

> "It is important to remember that we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." Consequently, the "police officer conducting a stop is not required to precisely and individually articulate the facts that added up to suspicion in his mind."

Id. (quoting United States v. Brown, 232 F.3d 589, 594 (7th Cir. 2000)).

Code § 46.2-1054 prohibits, among other things, any object from being "suspended from any part of the motor vehicle in such a manner as to obstruct the driver's clear view of the highway through the windshield, the front side windows, or the rear window." By statute, a highway includes "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys." Code § 46.2-100. Recently, we recognized that the term highway also includes "overhead highway signs, on-ramps and off-ramps, merge lanes, deceleration lanes, roadways, bridges, intersections, shoulders, pedestrian crosswalks, and shared-use paths." Mason v. Commonwealth, 64 Va. App. 292, 304-05, 767 S.E.2d 726, 733 (2015) (*en banc*) (footnotes omitted).

Freeman argues:

> The trial court erred by finding the police officer had reasonable articulable suspicion to stop the vehicle operated by Freeman

based on air fresheners suspended from the rearview mirror without identifying any objective facts, but for the air fresheners themselves, to suspect that the objects obstructed the driver's clear view of the highway.

We rejected a similar argument in <u>Mason</u>. In that *en banc* opinion, this Court held that a five-inch-long-by-three-inch-wide parking pass attached to the rearview mirror provided a reasonable basis for further investigation into whether the parking pass violated the proscription of Code § 46.2-1054. We noted:

> It is enough that the officer is aware of facts that, viewed objectively, could rise to a reasonable suspicion that the parking pass may be non-compliant with Code § 46.2-1054. Settled precedent has consistently recognized that reasonable suspicion need not rule out the possibility of innocent conduct.

<u>Mason</u>, 64 Va. App. at 306, 767 S.E.2d at 733-34.

Freeman discounts that the air fresheners themselves, suspended from the rearview mirror, provided objective facts upon which the officer could rely. However, the officer testified that the objects suspended from the rearview mirror "appeared to be multiple objects hanging [together]" and "[j]ust the size of it" caused him concern that the "dangling object . . . would impair or obstruct [Freeman's] view." The officer testified that he could see the objects through the glass of the back window even when he was a distance—more than a car length away—behind the vehicle.

Further, the trial court found, "[First], no question [the object] is obstructive." The court reasoned:

> absolutely . . . this amount of material of this width, which is wider than the rearview mirror, suspended for almost four times the width of the rearview mirror from the rearview mirror, would obstruct the driver's vision "in any car in America" in which they are making a right hand turn. So it clearly falls within the clear purview of the Statute as it is drafted.

As the court noted, both the size of the objects and the fact that they were suspended from the rearview mirror were objective facts that provided the officer with reasonable suspicion that Freeman's view of at least part of the roadway might be impaired or obstructed.

Finally, as in Mason, photographs of the air fresheners suspended from Freeman's rearview mirror were introduced into evidence. "We need no description of [the dangling air fresheners] from the officer. [This Court is] looking at the very thing that the officer said he clearly saw[.]" Mason, 64 Va. App. at 305, 767 S.E.2d at 733. In comparing the photographs of the clump of air fresheners hanging from Freeman's rearview mirror with the photograph of the parking pass included in our opinion in Mason, we have no hesitation in concluding that the officer had an objectively reasonable suspicion that the objects obstructed Freeman's vision of the highway. Thus, the officer had a reasonable suspicion Freeman might be violating Code § 46.2-1054. As a result, the court did not err in denying the motion to suppress the evidence on this basis. [3]

## B. FREEMAN'S "VOID FOR VAGUENESS" ARGUMENT

Freeman also argues that even if there was a reasonable suspicion that he was in violation of the statute, the evidence should have been suppressed because Code § 46.2-1054 is unconstitutional in that it is void for vagueness. [4] His argument, in its essence, is that the only

---

[3] The court additionally found the object's hand-grenade shape alone provided the officer with sufficient reasonable suspicion that further investigation was justified. The court reasoned, "Given the current social and political malure [sic] in this country, that if I saw, as a police officer, what purports to be a hand grenade hanging from somebody's rearview mirror, I think that is reasonable articulable suspicion." However, the officer testified he could not tell what the dangling objects were. At oral argument, the Commonwealth conceded that the trial court's finding was clearly wrong and without evidence to support it. Thus, and in light of our opinion, we decline to consider this as an alternative holding supporting the trial court's denial of the motion.

[4] "[The United States Supreme Court] has on more than one occasion invalidated statutes under the Due Process Clause of the Fifth or Fourteenth Amendment because they contained no

criminal activity he was suspected of engaging in was violating Code § 46.2-1054. Thus, he reasons, if that statute is unconstitutional, his conduct was not criminal, and the officer could not lawfully detain him. Therefore, he asks us to apply the exclusionary rule to suppress the evidence.

As a preliminary matter, we decline to opine on the constitutionality of Code § 46.2-1054 because it is unnecessary to our decision.[5] "One of the most firmly established doctrines in the field of constitutional law is that a court will pass upon the constitutionality of a statute only when it is necessary to the determination of the merits of the case. This principle is recognized by appellate courts generally." Bissell v. Commonwealth, 199 Va. 397, 400, 100 S.E.2d 1, 3 (1957); Bell v. Commonwealth, 264 Va. 172, 203, 563 S.E.2d 695, 715 (2002) ("A fundamental and longstanding precept of this doctrine [best and narrowest grounds] is that 'unnecessary adjudication of a constitutional issue' should be avoided."). Rather than engage in an unnecessary analysis of the constitutionality of Code § 46.2-1054, we will limit our decision to the issue before us: whether the trial court should have suppressed the evidence. We conclude that irrespective of the statute's validity, based on the state of the law at the time of the stop, the trial court was correct in refusing to suppress the evidence.

standard whatever by which criminality could be ascertained, and the doctrine of these cases has subsequently acquired the shorthand description of 'void for vagueness.'" Parker v. Levy, 417 U.S. 733, 755 (1974). We assume that it is this constitutional principle to which Freeman is referring.

[5] We note that Freeman cannot mount a direct challenge to the constitutionality of Code § 46.2-1054 in this proceeding because he was not charged with a violation of that statute. Peck v. Kennedy, Zoning Adm'r, 210 Va. 60, 63, 168 S.E.2d 117, 120 (1969) ("It is a fundamental principle of constitutional law that one challenging the constitutionality of a statute or ordinance has the burden of showing that he himself has been injured or threatened with injury by its enforcement."). His argument is therefore limited to whether the trial court erred in denying the motion to suppress when the officer's reasonable suspicion of criminal activity was based on a violation of that statute.

1. The Purpose of the Exclusionary Rule

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands, Arizona v. Evans, 514 U.S. 1, 10 (1995).'" Herring v. United States, 555 U.S. 135, 139 (2009). The Supreme Court, however, established a rule that forbids the government from using improperly obtained evidence at trial. See Elkins v. United States, 364 U.S. 206, 223-24 (1960).

> [T]he rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures: "The rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it."

United States v. Calandra, 414 U.S. 338, 347 (1974) (quoting Elkins, 364 U.S. at 217). Accordingly, when the police discover evidence during an unreasonable search or seizure, the exclusionary rule generally prohibits the use of such evidence at trial.

However, "suppression is not an automatic consequence of a Fourth Amendment violation." Herring, 555 U.S. at 137; id. at 141 ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."). On the contrary, exclusion "'has always been our last resort, not our first impulse.'" Id. at 140 (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)). The purpose of the exclusionary rule is to deter future Fourth Amendment violations. Id. "Given that purpose, '[a] defendant seeking application of the exclusionary rule faces a "high obstacle" in demonstrating that exclusion is appropriate.'" Echavarry v. Commonwealth, 60 Va. App. 177, 184, 725 S.E.2d 151, 155 (2012) (quoting Fitchett v. Commonwealth, 56 Va. App. 741, 746, 697 S.E.2d 28, 31 (2010)). This is because application of the "exclusionary rule generates 'substantial social costs,' which sometimes

include setting the guilty free and the dangerous at large." Id. (quoting Hudson, 547 U.S. at 591); see Herring, 555 U.S. at 144 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."). "Therefore, '[w]here suppression fails to yield "appreciable deterrence," exclusion is "'clearly . . . unwarranted.'"" Echavarry, 60 Va. App. at 185, 725 S.E.2d at 155 (quoting Davis v. United States, 131 S. Ct. 2419, 2426 (2011)). Finally, however, if the issue before us "relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal" the exclusionary rule does not apply at all because "there was no violation of the Fourth Amendment in the first place." Heien v. North Carolina, 135 S. Ct. 530, 539 (2014).

2. There Is No Fourth Amendment Violation When an Officer Has Reasonable Suspicion of Unlawful Conduct

In a case very similar to the issue before us, the United States Supreme Court found that even though an ordinance was subsequently found to be unconstitutional, that did not mean the arrest under that statute violated the Fourth Amendment. In Michigan v. DeFillippo, 443 U.S. 31, 39-40 (1979), a police officer arrested DeFillippo for violation of a city ordinance. DeFillippo was not convicted of violation of that ordinance, however, but instead was tried and convicted for possession of drugs found in the search incident to arrest. DeFillippo argued that "since the arrest was for allegedly violating a Detroit ordinance later held unconstitutional, the search was likewise invalid." Id. at 36. The Court disagreed. It noted that "the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Id. Likewise, the fact that the law is later found to be unconstitutional is irrelevant to whether the officer had probable cause to believe that the defendant's conduct was unlawful. Id. at 40 ("The subsequently determined invalidity of [the] ordinance on vagueness grounds does not

undermine the validity of the arrest made for violation of that ordinance, and the evidence discovered in the search [of the defendant pursuant to the arrest] should not [be] suppressed."). The Court reasoned:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

Id. at 38. Further, "there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance." Id. at 37. The Court noted that the exclusionary rule does not apply when the officer's conduct is lawful because

> the purpose of the exclusionary rule is to deter unlawful police action. No conceivable purpose of deterrence would be served by suppressing evidence which, at the time it was found on the person of the respondent, was the product of a lawful arrest and a lawful search. To deter police from enforcing a presumptively valid statute was never remotely in the contemplation of even the most zealous advocate of the exclusionary rule.

Id. at 38 n.3; see also Illinois v. Krull, 480 U.S. 340, 349 (1987) ("Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. . . . Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (alterations in original)).

In Heien v. North Carolina, the Court once again drew the distinction between application of the exclusionary rule and "the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal." 135 S. Ct. at 539. An officer stopped Heien when the officer noticed that one of Heien's brake lights was not working and

suspected that Heien was violating the state statute requiring a working "stop lamp." Id. at 534. Upon Heien's consent to a search, the officer found drugs. Id. Heien was prosecuted for possession of the drugs, but not for violation of the "stop lamp" statute. Id. at 535. Heien argued that because he was not actually in violation of the statute, the officer had no objectively reasonable suspicion that his conduct was unlawful. He argued that the stop was thereby unconstitutional and the subsequently found evidence should be suppressed. Id.

The state supreme court "assumed for purposes of its decision that the faulty brake light was not a violation" of the statute. Id. Nevertheless, the court reasoned that because the officer's "mistaken understanding of the vehicle code was reasonable, the stop was valid. . . . [W]hen an officer acts reasonably under the circumstances, he is not violating the Fourth Amendment." Id. The United States Supreme Court agreed.

The Supreme Court observed that in a number of cases it has "looked to the reasonableness of an officer's legal error in the course of considering the appropriate remedy for a constitutional violation, instead of whether there was a violation at all." Id. at 539. In those cases, however, a Fourth Amendment violation already had been found or presumed, and therefore "[a]ny consideration of the reasonableness of an officer's mistake was limited to the separate matter of remedy." Id. In contrast, the Court's analysis of Heien, like its analysis of DeFillippo, "relate[d] to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place." Id. The Court explained that even if the suspect "could not be prosecuted under the [law triggering the stop], the search that turned up the drugs was constitutional" because the officers made an objectively reasonable assumption that the law was valid. Id. at 538. The Court concluded,

- 12 -

> [J]ust because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop. And Heien is not appealing a brake-light ticket; he is appealing a cocaine-trafficking conviction as to which there is no asserted mistake of fact or law.

Id. at 540.

The Supreme Court of Virginia embraced the rationale of DeFillippo in Jones v. Commonwealth, 230 Va. 14, 334 S.E.2d 536 (1985). In Jones, the defendant argued that the ordinance for which he was stopped was unconstitutional because it was "violative of Fourth Amendment Rights," and the evidence subsequently seized should be suppressed. Id. at 17, 334 S.E.2d at 539. Although finding the ordinance at issue in Jones to be constitutional, the Court observed (albeit in dicta) that even if it had held the ordinance to be unconstitutional, "the finding that the search was valid would still stand." Id. at 21, 334 S.E.2d at 541. This was because the officer "acted in good faith reliance upon the validity of [the ordinance]." Id. at 22, 334 S.E.2d at 542. The Court relied on DeFillippo for the principle that a law is "presumptively valid and remains[s] valid until declared otherwise." Id. (citing DeFillippo 443 U.S. at 37-38). The Court additionally noted that the United States Court of Appeals for the Fourth Circuit subsequently relied on DeFillippo to uphold an arrest and search without deciding the constitutional issue, reasoning that "the arresting officer had 'acted in good faith . . . reliance on the validity of . . . Section 17-13c and for this reason [the court] need not address its constitutionality.'" Id. (alterations in original) (quoting United States v. LeFevre, 685 F.2d 897, 901 (4th Cir. 1982)). The Court concluded that the search "would have been valid, therefore, regardless of the ultimate outcome of [appellant's] attack upon the constitutionality of [the ordinance]." Id. at 23, 334 S.E.2d at 542.

### 3. Investigator Kahle Relied on a Duly Enacted Statute

We likewise conclude that the evidence seized by Investigator Kahle was admissible "regardless of the ultimate outcome of [Freeman's] attack upon the constitutionality of [the statute]." Id. When Investigator Kahle observed the objects dangling from Freeman's rearview mirror, he was aware that the General Assembly had duly enacted Code § 46.2-1054. "[D]uly enacted laws are presumed constitutional." Chianelli v. Commonwealth, 64 Va. App. 632, 642, 770 S.E.2d 778, 783 (2015); Bowman v. Virginia State Entomologist, 128 Va. 351, 375, 105 S.E. 141, 149 (1920) ("Every statute is presumed to have been enacted in accordance with the constitutional requirements until the contrary is made to appear."); Laurels of Bon Air, LLC v. Med. Facilities of Am. LIV Ltd. P'ship, 51 Va. App. 583, 613, 659 S.E.2d 561, 576 (2008) ("All statutes enacted by the General Assembly are presumed to be constitutional."). Furthermore, at the time that Investigator Kahle stopped Freeman, there was no controlling precedent[6] that Code § 46.2-1054 was or was not constitutional, and hence Freeman's conduct violated a "presumptively valid ordinance." Jones, 230 Va. at 22, 334 S.E.2d at 542. The statute is presumptively valid and remains valid until declared otherwise. Id. Investigator Kahle had a reasonable suspicion in view of all the circumstances that Freeman's conduct was unlawful. Consequently, "there was no violation of the Fourth Amendment in the first place." Heien, 135 S. Ct. at 539.

---

[6] Further, at the time Investigator Kahle stopped Freeman, no appellate court in the Commonwealth had addressed the constitutionality of Code § 46.2-1054. This Court had issued unpublished opinions affirming denial of motions to suppress where the traffic stop was pursuant to observation of an air freshener dangling from the rearview mirror in possible violation of Code § 46.2-1054. See Mason v. Commonwealth, 64 Va. App. 292, 299, 767 S.E.2d 726, 730 (2015) (citing Commonwealth v. Bryant, No. 0076-04-1, 2004 Va. App. LEXIS 283, at *4 (Va. Ct. App. June 15, 2004); Richardson v. Commonwealth, No. 0946-13-3, 2014 Va. App. LEXIS 98, at *4, *11 (Va. Ct. App. Mar. 18, 2014); Pegram v. Commonwealth, No. 1041-95-2, 1996 Va. App. LEXIS 611, at *2 (Va. Ct. App. Sept. 24, 1996)).

Moreover, Freeman, like the defendant in <u>Heien</u>, "is not appealing a [traffic] ticket; he is appealing a [drug] conviction as to which there is no asserted mistake of fact or law." <u>Id.</u> at 540. Even if Freeman "could not be prosecuted under . . . [Code § 46.2-1054], the search that turned up the drugs was constitutional." <u>Id.</u> at 538. There has been no Fourth Amendment violation in this case irrespective of the constitutionality of § 46.2-1054. Accordingly, the trial court did not err in denying Freeman's motion to suppress.

## C. RIGHT RESULT, WRONG REASON

Although Freeman, in his motion to suppress and his argument before the trial court, anticipated the inapplicability of the exclusionary rule in instances where an officer is enforcing a facially valid statute, the trial court summarily ended his argument on that point by concluding that "if the [s]tatute is void for vagueness it fails on its face. . . . [It] is a nullity. I mean, we can't stop somebody for a [s]tatute that is void." App. at 141.[7] That erroneous conclusion, however, does not prevent us from correctly applying the law in this case.[8] "When the trial court has reached the correct result for the wrong reason, but the record supports the right reason, 'we will assign the correct reason and affirm that result.'" <u>Perry v. Commonwealth</u>, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting <u>Mitchem v. Counts</u>, 259 Va. 179, 191, 523 S.E.2d 246, 253 (2000)). Only when "the record does not support the arguments made for the first time on appeal

---

[7] In his motion to suppress and at oral argument, Freeman acknowledged that the officer's good faith reliance on a presumptively valid statute would normally preclude suppression of evidence. However, he argued in his motion and at oral argument that the trial court and this Court "should find the statute void for vagueness to discourage subsequent pretextual stops for air freshener or fuzzy dice that adorn a substantial percentage of automobiles operated in Virginia." App. at 62. We decline his invitation because doing so would amount to issuing an advisory opinion. <u>Commonwealth v. Harley</u>, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) ("'[C]ourts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative.'" (quoting <u>City of Fairfax v. Shanklin</u>, 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964))).

[8] We invited both parties to provide supplemental briefing on whether the exclusionary rule should be applied where an officer is relying on a facially valid statute.

[is] application of the right result for the wrong reason doctrine . . . inappropriate . . . ." Id. at 579, 701 S.E.2d at 435.

Here, the trial court denied the motion to suppress the evidence because it held that the statute involved was not unconstitutionally vague. As we noted above, the court did not need to make this finding because there was a narrower basis for deciding the issue. Furthermore, the facts necessary for our *de novo* review of the applicability of the good faith exception to the exclusionary rule were fully developed. Therefore, we conclude the right result, wrong reason doctrine is applicable, and we affirm the trial court's denial of the motion on different grounds.

### III. CONCLUSION

We hold that the court did not err in denying Freeman's motions to suppress. We therefore affirm the convictions.

<u>Affirmed.</u>