UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Petty and Alston
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.       Record No. 1160-15-2                     JUDGE WILLIAM G. PETTY
                                                        DECEMBER 22, 2015

CHARVELLE LOUIS COLLINS


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellant.

Dorian Dalton, Senior Assistant Public Defender, for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the decision of the trial court

granting Charvelle Louis Collins's motion to suppress evidence.  On appeal, the Commonwealth

argues that the trial court erred in finding that the officer lacked reasonable suspicion to conduct

a traffic stop based on the objectively reasonable belief that the defendant was violating

Richmond City Code § 38-40[1] prohibiting excessive noise from vehicles.  For the following

reasons, we reverse the trial court's decision and remand for proceedings consistent with this

opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Richmond City Code § 38-40 was in effect at the time of the traffic stop on March 23, 2015.  On June 22, 2015, § 38-40 was recodified and adopted as Richmond City Code § 11-28. There were no substantive changes made to the relevant portion of the ordinance.

## I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"In reviewing a trial court's ruling on a suppression motion, we consider the evidence in the light most favorable to the prevailing party below," the defendant in this instance, "granting to it all reasonable inferences fairly deducible therefrom." Askew v. Commonwealth, 38 Va. App. 718, 722, 568 S.E.2d 403, 405 (2002).

## II.

The Commonwealth contends that the trial court erred in granting Collins's motion to suppress evidence discovered pursuant to a stop of his vehicle. On appeal from such an order, the Commonwealth has the burden to show that the ruling constituted reversible error. See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). "[D]eterminations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." Ornelas v. United States, 517 U.S. 690, 699 (1996). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

"[W]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief." Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (*en banc*) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). Therefore, "[i]n order to justify an investigatory stop of a vehicle, [an] officer must

have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity." Id.

Here, Officer Kiniry testified at the suppression hearing that he stopped Collins based on a suspicion that Collins was violating the Richmond noise ordinance, Richmond City Code § 38-40. In relevant part, the code section provides:

> It shall be unlawful for any person to play . . . any electronic device or horn used for the amplification of sound, which is located within a motor vehicle being operated or parked on a public or private street or alley, in such a manner as to be plainly audible to the human ear at a distance of at least 50 feet from the vehicle in which it is located.

Richmond City Code § 38-40(b).

Officer Kiniry testified that he was sitting in his car at an intersection when he heard loud music coming from Collins's car as it was traveling past. Officer Kiniry had his window slightly rolled down, and there was no other traffic or noise around at the time. When Collins's car was two-and-a-half to three car lengths away from him, Officer Kiniry could hear the music very loudly and could hear the car's trunk rattling from the music's volume. The trial court found that the distance of two-and-a-half to three car lengths was somewhere between forty-two and fifty feet. Officer Kiniry testified that he proceeded to follow Collins's car and could still faintly hear the music from a distance of approximately one hundred feet away. Officer Kiniry testified that from one hundred feet away he could not identify the song being played. He then initiated a traffic stop. After the car was stopped, Collins consented to a search of his car, where a firearm was found. Collins was charged with possession of a firearm by a convicted felon, and at trial he moved to suppress the firearm.

After hearing Officer Kiniry's testimony, the trial court made a series of remarks about § 38-40 of the Richmond City Code, observing that it was "almost unenforceable . . . because of the problems with the evidence. And . . . the same problems with finding reasonable suspicion

- 3 -

. . . it's so hard to know how it's violated, how could you have reasonable suspicion." The trial

court noted that "the crime in this case is so vague that it impacts the reasonable suspicion,

because it's reasonable suspicion of what, and it's got to be a crime . . . . And this crime is so

vaguely worded." The trial court then granted Collins's motion to suppress

RELIANCE ON A VALIDLY ENACTED STATUTE

On appeal, the Commonwealth argues that the trial court's comments suggesting that the

noise ordinance is unconstitutionally vague do not change the reasonable suspicion analysis,

because the officer acted in reliance on a validly enacted law.[2] We agree.

At the outset, we reiterate the well-established principle that "duly enacted laws are

presumed constitutional." Freeman v. Commonwealth, 65 Va. App. 407, __, 778 S.E.2d 519, __

(2015) (quoting Chianelli v. Commonwealth, 64 Va. App. 632, 642, 770 S.E.2d 778, 783

(2015)); Bowman v. Va. State Entomologist, 128 Va. 351, 375, 105 S.E. 141, 149 (1920)

("Every statute is presumed to have been enacted in accordance with the constitutional

requirements until the contrary is made to appear."). Moreover, "a law is 'presumptively valid

and remains[s] valid until declared otherwise.'" Freeman, 65 Va. App. at __, 778 S.E.2d at __

(quoting Jones v. Commonwealth, 230 Va. 14, 22, 334 S.E.2d 536, 542 (1985)). There is no

controlling precedent that § 38-40 is unconstitutional, and therefore it is a valid city ordinance.

Furthermore, as the Commonwealth points out, the trial court's opinion on § 38-40's

constitutionality does not impact the outcome of the reasonable suspicion analysis. In Michigan

v. DeFillippo, 443 U.S. 31, 40 (1979), the United States Supreme Court held that an arrest made

---

[2] We note that Collins does not agree with the trial court's statements which appear to suggest that Richmond City Code § 38-40 is unconstitutionally vague. Rather, Collins concedes that "[t]he language of the ordinance at issue in this case is sufficiently clear and definite." While we conclude that the officer had a reasonable suspicion of criminal activity that justified the stop, we address the constitutional void for vagueness issue simply because it appears the trial court may have relied on that theory as a reason for granting the motion.

in reliance on a validly enacted law, which has not been declared unconstitutional, was a lawful arrest. The Court held that the exclusionary rule does not apply to suppress evidence obtained from lawful police conduct "because the purpose of the exclusionary rule is to deter unlawful police action. No conceivable purpose of deterrence would be served by suppressing evidence which, at the time it was found on the person of the respondent, was the product of a lawful arrest and a lawful search." DeFillippo, 443 U.S. at 38 n.3; see also Freeman, 65 Va. App. at __, 778 S.E.2d at __ (holding recently that evidence from a lawful traffic stop based on a validly enacted statute should not be suppressed). Moreover, "police are charged to enforce laws until and unless they are declared unconstitutional," and "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." Freeman, 65 Va. App. at __, 778 S.E.2d at __ (alteration in original) (quoting DeFillippo, 443 U.S. at 38).

Here, Officer Kiniry relied on Richmond City Code § 38-40 — a validly enacted and presumptively constitutional ordinance. A violation of § 38-40 is a form of "criminal activity," and the reasonable suspicion of such a violation "justif[ies] an investigatory stop." Logan, 19 Va. App. at 441, 452 S.E.2d at 367. Accordingly, Officer Kiniry was constitutionally entitled to stop Collins if he had reasonable suspicion that Collins was violating § 38-40.

REASONABLE MISTAKE OF LAW

Collins's primary argument is that Officer Kiniry could not have reasonably suspected a violation of § 38-40 because a "faint" sound is not equivalent to the "plainly audible" sound prohibited by the ordinance. This argument focuses solely on Officer Kiniry's testimony that the music was "faint" from a distance of one hundred feet.[3] Assuming without deciding that "plainly

---

[3] Collins ignores Officer Kiniry's testimony that the music was "loud" from a distance of forty-two to fifty feet.

audible" means something louder than "faint," there was still no Fourth Amendment violation here.

In Heien v. North Carolina, 135 S. Ct. 530, 540 (2014), the United States Supreme Court held that an investigatory traffic stop based on a "reasonable mistake of law" does not constitute a Fourth Amendment violation. The Supreme Court had previously held that searches and seizures based on reasonable mistakes of fact can be valid. See Illinois v. Rodriguez, 487 U.S. 177, 183-86 (1990). Extending this principle to reasonable mistakes of law, the Court held:

> Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

Heien, 135 S. Ct. at 536.

"The limit is that 'the mistakes must be those of reasonable men.'" Id. (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Id. (quoting Brinegar, 338 U.S. at 176).

In Heien, the Court found no Fourth Amendment violation when an officer mistakenly interpreted the "stop lamp" provision of a North Carolina law to require two brake lights. See id. at 540. The law at issue had never been construed by the North Carolina appellate courts, and the Court determined that the officer's reading of the law was reasonable. Id. Similarly, the term at issue here—"plainly audible"—is not defined in the Richmond City Code and has not

been previously construed by Virginia's appellate courts.[4]  Officer Kiniry could have reasonably interpreted "plainly audible" noise to mean a noise that he could hear without enhancement.  It was thus objectively reasonable for Officer Kiniry to think that any music his unaided ear could hear, even faintly, from a distance of fifty feet or more, violated § 38-40.

REASONABLE SUSPICION

Furthermore, under any reasonable understanding of the terms of § 38-40, the circumstances here, viewed in the light most favorable to Collins, justified the traffic stop.  The Commonwealth did not need to prove that Collins was *actually* in violation of the ordinance— only that Officer Kiniry had an objectively reasonable suspicion that Collins was in violation of the ordinance.  See Rodriguez, 497 U.S. at 185-86; DeFillippo, 443 U.S. at 36.

Reasonable suspicion entails proof that is "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less demanding than that for probable cause.'"  Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).  "[R]easonable suspicion requires merely 'that there exists at the time of the stop a substantial possibility — or, indeed, even a "*moderate chance*" — that [unlawful] conduct has occurred, is occurring, or is about to occur.'"  Mason v. Commonwealth, 64 Va. App. 292, 301, 767 S.E.2d 726, 731 (2015) (*en banc*) (second alteration in original) (quoting 4 Wayne R. LaFave, Search & Seizure § 9.5(b), at 658-59 (5th ed. 2012)).

_____

[4] The parties agree that the definitional portion of the Richmond City Code of Ordinances in effect at the time of the offense did not contain a definition of the term "plainly audible." However, we note that other Virginia localities have defined the term "plainly audible."  See Amelia Cty. Noise Ordinance § 2 ("[A]ny sound that can be heard clearly by a person using his or her unaided hearing faculties."); Fredericksburg City Code § 38-32 ("Any sound that can be heard clearly by a person using his or her unaided hearing faculties, including understandable speech, comprehensible musical rhythms, melody, or instrumentation, and detectable rhythmic bass tones."); Williamsburg City Code § 12-71 ("Any sound, other than unamplified human conversation that can be detected by a person using his or her unaided hearing faculties."). Given these definitions, we conclude that Officer Kiniry could have reasonably understood the term "plainly audible" to mean any noise he could hear, albeit faintly, without aid.

"A police officer's 'action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action."'" Freeman, 65 Va. App. at __, 778 S.E.2d at __ (quoting Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (alteration in original)). "[W]e are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." Id. at __, 778 S.E.2d at __ (quoting Raab, 50 Va. App. at 583 n.2, 652 S.E.2d at 148 n.2).

Here, the fact that Officer Kiniry could hear the music "loudly" when he was between forty-two and fifty feet away from Collins's car indicated that there was a substantial possibility that Collins's music was "plainly audible" from a distance greater than fifty feet. Collins's argument that there was no reasonable suspicion relies solely on Officer Kiniry's testimony that from one hundred feet away, he could only "faintly" hear the music and could not identify the song being played. However, one hundred feet is double the distance required by § 38-40. And, Officer Kiniry stated that he could not identify the song being played because it was rap music — not because it was too quiet. Officer Kiniry's testimony about what he could hear from one hundred feet away does not undermine the conclusion that the music might have been plainly audible from a distance of fifty feet.

We conclude that a reasonable officer in Officer Kiniry's circumstances would have been suspicious that Collins's music was "plainly audible" from a distance of fifty feet or more. Thus, Officer Kiniry had an objectively reasonable suspicion that Collins was violating § 38-40. Accordingly, we hold that the trial court erred in granting Collins's motion to suppress.

III.

For the foregoing reasons, we reverse the trial court's decision granting Collins's motion to suppress and remand for proceedings consistent with this opinion.

<u>Reversed and remanded.</u>